ELLA M. GRIMM, ET AL. *v.* CHARLES E. VIRTS, EXECUTOR

[No. 27, October Term, 1947.]

*Decided November 14, 1947.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*Omer T. Kaylor,* with whom was *Harry E. Snyder* on the brief, for the appellants.

*Charles W. Wolf* for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

This appeal presents the familiar pattern of an executor attempting to set aside a transfer of a bank account made by his testatrix prior to her death. Such a case obviously depends largely upon the evidence produced as to the mental capacity of the testatrix, her knowledge of what she was doing, and the surrounding circumstances when the transfer was made. Notwithstanding this, however, the appellants overlooked or ignored our Rule 39, Section 1(e), which requires their appendix to contain such parts of the record as they desire the Court to read. They have printed in their appendix nothing but the opinion of the Chancellor and the decree. The appellee has no appendix to his brief, and submitted the case here without argument. Under these circumstances we consider, as we have several times stated, only the uncontroverted facts set out in the briefs and in the opinion of the Chancellor, and will decide the case as presented by these facts.

The Chancellor held that the testatrix was mentally competent to execute a valid instrument at the time she made the transfer, that Joseph E. Himes, one of the transferees and appellants, stood in a confidential relationship to her, but that he did not show that it was her free and voluntary act, and, therefore, that the transfer should be set aside. He further held that the

form of the assignment was a gift *inter vivos,* and that as the testatrix retained the bank book, the gift was never completed. As the result of these conclusions, he directed that the account revert to the name of the testatrix in which it was before the transfer. From this decree the transferees appeal.

The facts as we have been able to glean them, show that Annie B. Reeser, a widow, without children, died on June 2, 1945, at the age of 72. She was survived by a sister, Mrs. Ella N. Grimm, one of the appellants, and some nieces and nephews, one of whom was Joseph E. Himes, the other appellant. She owned a small house in Washington County, and lived there until five or six years before her death. Then she spent some time at the home of her brother, John Himes, but in December, 1944, a daughter of the latter took Mrs. Reeser to Mrs. Grimm's home and let her out at the gate. Thereafter she lived there. She rented her home on March 24, 1945, and on April 24th the tenant paid her the rent and took a receipt. On this last mentioned day, she signed the order to transfer the account which is in question here. On August 23, 1944, Mrs. Reeser had on deposit in the Brunswick Bank, $390.80. On that day she and the two appellants went to the Brunswick Bank and took from her safe deposit box $2000 she had there in cash. This and the $390.80 was entered on a pass book No. A-1609 in her name. They also took from the box $200 which was entered in Mrs. Reeser's checking account. This last item does not enter into this case. On April 20, 1945, Joseph E. Himes went to the bank and had the Assistant Cashier prepare an order which read "I request you and authorize you to make my savings account A-1609 jointly with my sister, Ella N. Grimm and nephew, Joseph E. Himes." On April 24th, this was signed by Mrs. Reeser. Her signature was witnessed by her nephew Roger Himes, and his wife, Dorothy. Roger was the son of Joseph. Joseph called them on the phone, told them their aunt wanted them, and then went over and got them. On the same day this paper

was executed, Himes took it and the pass book to the bank, and the Assistant Cashier stamped the pass book with a rubber stamp. The entry, after this stamp had been applied, read, "Annie B. Reeser, in trust for her, Joseph E. Himes and Ella N. Grimm, joint owners, subject to the check of either, the balance at the death of either to belong to the survivor." The book so stamped was returned by Joseph Himes to Mrs. Reeser. She opened it, read it in the presence of the two witnesses to the order, and said that was the way she wanted it.

Several physicians testified as to Mrs. Reeser's condition. One said she had senile dementia. One of the doctors who saw her on only one occasion said she was mentally and totally incapacitated on March 27, 1945. Another doctor, who attended her on a number of occasions, recalled his visits on January 20th and April 20th. She was mentally disabled on January 20th and on April 20th she had deteriorated in mind, was much confused and seemed, more or less, in a stupor. This physician diagnosed her condition as cerebral arteriosclerosis. Her attending physician, who had known her for 15 years and attended her once a week from March 1st until the date of her death, attributed her illness to uremia. He said that at times she was mentally incapacitated, but at other times she was perfectly normal. He said the uremic condition could clear up in twenty-four or even twelve hours. There was other testimony *pro* and *con* as to her mental condition. Mrs. Reeser signed her own checks, although her nephew, Joseph Himes, wrote most of them for her and cashed them. When she sold her furniture and the personal property at her home, he represented her at a community sale. He paid her real estate taxes, but she rented her own house and collected the rent on April 24th, and gave a receipt. He admitted he looked after most of whatever business she had.

On the strength of this testimony we agree with the Chancellor, that the evidence is not sufficient to show that she was mentally incompetent on April 24th, and we further agree with him that on April 24th Joseph E.

Himes stood in a confidential relationship with Mrs. Reeser. In cases where the latter condition prevails, any gift made or transaction had adverse to the donor which has the effect of taking from her the dominion and control over her property must be explained by the donee. The latter, in such case, must show that the gift was free and voluntary, fair and proper, and untainted by undue influence or fraud.

In the case at bar, however, it does not appear to us that Mrs. Reeser made an irrevocable gift *inter vivos*, or that she stripped herself of any part of her estate. When the pass book was returned to her, she approved the form of the account after she had looked at it, and she said that was what she wanted done. There is no evidence to the contrary. Such an entry, unexplained, is a declaration of trust. *Milholland v. Whalen,* 89 Md. 212, 43 A. 43, 44 L. R. A. 205; *Ragan v. Kelly,* 180 Md. 324, 24 A. 2d 289; *Bradford v. Eutaw Sav. Bank,* 186 Md. 127, 46 A. 2d 284. The record shows that according to the first account filed in Mrs. Reeser's estate, she had total assets of $6054.32, exclusive of the savings account. She retained control of her savings account under the trust form, and could have withdrawn the entire amount at any time, had she wished. In view of the fact that one of the appellants was her sister, at whose home she lived, and the other appellant was the nephew upon whom she relied to attend to much of her business, her desire to give them more than her other relatives is a perfectly natural and understandable one. It does not, under the circumstances of the case, require any special explanation, since, as we have already said, we agree with the conclusion of the Chancellor that the evidence does not show that the grantor was of unsound mind or was in any way induced by fraud or undue persuasion to make the transfer.

Under these circumstances we can see no reason or justice in setting aside a natural act done by a person who knew what she was doing, and had the undoubted right to dispose of her property as she saw fit. Courts

have no authority to dispose of the property of a person against the will of that person exercised when it is free and uncontrolled. The decree of the Chancellor will, therefore, he reversed and the bill dismissed.

*Decree reversed, bill dismissed, with costs to the appellants.*