## HALEY *v.* STATE

[No. 134, October Term, 1951.]

 

*Decided May 7, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*C. Orman Manahan* for the appellant.

*Robert M. Thomas, Assistant Attorney General,* with whom were *Hall Hammond, Attorney General,* and *Daniel M. Murray, Jr., State's Attorney for Howard County,* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a judgment and sentence of the trial court, sitting without a jury, by the appellant, Carl R. Haley, who was charged on information with committing a certain unnatural and perverted sexual practice, on July 26, 1951, with a certain female named therein.

The appellant claims there was not sufficient evidence before the trial judge to convict him of the offense

charged. The appellee claims the appellant is not entitled to question the sufficiency of the evidence because he failed to include the evidence in the appendix to his brief. As pointed out in many previous cases, Rule 39 (1) (e) of The Rules and Regulations of the Court of Appeals requires that in the appendix to the appellant's brief must be printed "such parts of the record as he desires the Court to read". We have held in many cases that this rule means exactly what it says. Some of these cases are: *Strohecker v. Schumacher,* 185 Md. 144, 146, 147, 43 A. 2d 208; *Condry v. Laurie,* 186 Md. 194, 197, 46 A. 2d 196; *Grimm v. Virts,* 189 Md. 297, 299, 55 A. 2d 716. We have dismissed a number of appeals for failure to abide by this rule. *Sunshine Laundry Corp. v. White,* 197 Md. 582, 80 A. 2d 1; *Lane Manor Corp. v. Byers,* 199 Md. 406, 86 A. 2d 731. However, as pointed out in *Naughton v. Paul Jones & Co.,* 190 Md. 599 at page 605: "If the appellant's brief contains a statement of facts which the appellee accepts as accurate and sufficient, no evidence in appellant's appendix and no record references are necessary. But, in the absence of a stipulation between the parties, an appellant would act at his peril. If his statement of facts is disputed by his adversary and is not supported by evidence in his appendix, the only questions reviewable are questions which may be decided on facts that are not disputed." In the case at bar it seemed to be agreed at the argument in this Court that the only essential facts not contained in appellant's brief were certain obscene remarks made by the appellant during the commission of the offense which tended to prove his guilt. These remarks on account of their obscenity were omitted but are considered by this Court on the question of appellant's guilt.

At about 11 P. M. on July 26, 1951, an automobile was seen moving rapidly into a state forest in Howard County. It stopped and the lights were turned out. At a distance of 25 or 30 yards from the automobile a forest warden, accompanied by another man, was in a truck

with its lights turned out. The horn of the automobile was blown for some time and shouts were heard from the car. The dome light was turned on and the occupant on the left of the car in the driver's seat was seen striking the person on the right. The two men got out of their truck to investigate and the dome light of the automobile was turned off. The man in the automobile was then heard making certain obscene remarks. These are the words omitted from appellant's brief, which constitute strong evidence against him. Mumbling and slapping followed these remarks. The noises finally ceased. The forest warden then approached the automobile from the driver's side and the other man from the other side. They flashed flash lights in the car. The male occupant seated in the driver's seat was completely nude and the woman was fully clothed. The woman had been sitting straight up, but had lain over with her face down in his lap and his hand was on top of her head. The man was then ordered from the car. It was stipulated that if the woman in the car had been present at the trial she would have testified that she was so intoxicated that she did not remember anything which had transpired. The men did not open the car door but could see the woman's face in the light. They also made certain observations of the man which it is not necessary to relate here. The man later dressed. He was drunk, but began to sober and was able to drive his car and speak clearly. The woman was incapable of speech and could not raise her head or her hand. The appellant did not testify in the case. It is plain that the trial judge was not clearly wrong in finding the appellant guilty of the crime charged on this testimony and on the remarks made by the appellant which are deleted from the brief and this opinion. Rule (7) (c) of the Criminal Rules of Practice and Procedure of this Court; *Edwards v. State,* 198 Md. 152, 83 A. 2d 578.

A motion for a new trial was filed on the usual grounds by the appellant, when for the first time it was contended that he, an American citizen, was a domestic servant of

Colonel David Herbert de Schinkel, Swedish Air Attache to the Swedish Embassy in Washington, D. C., and duly accredited by the United States Government, and as such was entitled to immunity from arrest and imprisonment. The motion for the new trial was refused.

Of course, there is no appeal to this Court from the refusal of a new trial. *Miller v. State,* 135 Md. 377, 379, 109 A. 104. This question was not raised and decided in the trial of the case below. Rule 9 of this Court provides: "In no case shall the Court of Appeals decide any point or question which does not plainly appear by the record to have been tried and decided by the Court below." This rule applies to criminal as well as to civil cases. *Davis v. State,* 189 Md. 269, 273, 55 A. 2d 702; *Swann v. State,* 192 Md. 9, 11, 63 A. 2d 324; *Madison v. State,* 200 Md. 1, 87 A. 2d 593. As this question involves relations with a foreign government it will be considered here, even though not properly raised.

With the motion for a new trial were filed the following papers:

"Embassy of Sweden
Washington 8, D. C.

It is hereby certified:

that Colonel Herbert de Schinkel is since October 1, 1946, the Air Attache of the Swedish Embassy in Washington, D. C., and is as such directly under the orders of the Ambassador of Sweden that Carl Haley, an American citizen, has since the spring of 1948 been employed by Colonel de Schinkel as his personal servant, and that there is nothing unfavorable about Haley known to this Embassy.

Washington, D. C., October 30, 1951
For the Ambassador
RAGNVALD BAGGE,
Minister Counselor.

(SEAL'S PLACE)

Air Attache
Embassy of Sweden
Washington 8, D. C.

The undersigned, Colonel de Schinkel, Air Attache to the Embassy of Sweden in Washington, D. C., being precluded—on account of my official position at the Embassy—from appearing in person before United States Court of Law, begs to make the following statement regarding my personal servant Carl Haley.

Carl Haley has been employed by me since the spring of 1948 as my personal servant and as captain aboard my boat. Throughout all this time he has conducted himself extremely well, and I have learned to appreciate him as an absolutely honest man. He has been a very good and reliable worker, and whatever I would put in his hands, I could always trust him to do to the best of his ability and with perfect loyalty. As far as I know, he has never done any thing wrong during the time he has been in my service.

I would appreciate if the rights and privileges enjoyed by personal servants to foreign diplomats be extended to Carl Haley.

Washington, October 30, 1951
HERBERT de SCHINKEL
Colonel"

(SEAL'S PLACE)

Under the seal of the Secretary of State the following letter was written to this Court:

"Department of State
Washington

February 19, 1952

The Court of Appeals,
State of Maryland.

Gentlemen:

The Department of State, at the request of the Attorney General of the State of Maryland, has

been asked to inform your Honorable Court of the status of Carl Haley, in an appeal now pending in the Court of Appeals under the caption: Haley v. The State of Maryland, No. 134, Court of Appeals, Maryland, October Term 1951.

Mr. Carl Haley, according to unofficial information available to the Department of State, has been employed by a diplomatic officer at the Swedish Embassy. The Swedish Ambassador has not notified the Department of State officially that Mr. Haley is so employed and the Secretary of State has not, therefore, transmitted his name to the Marshal of the District of Columbia in accordance with provisions of law as set forth in Section 252-254, Title 22, United States Code.

Under these circumstances the Department of State is of the opinion that Carl Haley does not have immunity under the sections of Federal law above quoted for the reason that there has been no official notification to the United States of any diplomatic status, hence he could not be accepted and received as such by United States.

> Very truly yours,
> For the Acting Secretary of State:
> JOHN F. SIMMONS
> Chief of Protocol."

Appellant claims diplomatic immunity under Title 22, U. S. C. A., Sections 252-254, which read as follows:

"252. *Suits against ministers and their domestics prohibited.* Whenever any writ or process is sued out or prosecuted by any person in any court of the United States, or of a State, or by any judge or justice, whereby the person of any ambassador or public minister of any foreign Prince or State, authorized and received as such by the President, or any domestic or domestic servant of any such minister, is

arrested or imprisoned, or his goods or chattels are distrained, seized, or attached, such writ or process shall be deemed void. (R. S. sec. 4063.)

"253. *Penalty for wrongful suit.* Whenever any writ or process is sued out in violation of the preceding section, every person by whom the same is obtained or prosecuted, whether as party or as attorney or solicitor, and every officer concerned in executing it, shall be deemed a violator of the laws of nations and a disturber of the public repose, and shall be imprisoned for not more than three years, and fined at the discretion of the court. (R. S. sec. 4064.)

"254. *Exceptions as to suits against servants etc., of minister; listing servants.* The two preceding sections shall not apply to any case where the person against whom the process is issued is a citizen or inhabitant of the United States, in the service of an ambassador or a public minister, and the process is founded upon a debt contracted before he entered upon such service; nor shall the preceding section apply to any case where the person against whom the process is issued is a domestic servant of an ambassador or a public minister, unless the name of the servant has, before the issuing thereof, been registered in the Department of State, and transmitted by the Secretary of State to the marshall of the District of Columbia, who shall upon receipt thereof post the same in some public place in his office. All persons shall have resort to the list of names so posted in the marshal's office, and may take copies without fee. (R. S. secs. 4065, 4066.)"

These statutory provisions were first enacted in 1790 and were copied from the British Statute of 1708 (7 Anne, ch. 12). They were merely declaratory of pre-

existing principles of international law and prescribed penalties for their violation. *Trost v. Tompkins*, D. C. Mun. App., 1945, 44 A. 2d 226; *In re Baiz*, 135 U. S. 403, 10 S. Ct. 854, 34 L. Ed. 222, 227.

It will be noted that under the provisions of the latter part of Section 254, *supra*, Section 253, providing the "penalty for wrongful suit", does not apply to domestic servants unless the name of the servant has been registered with the Department of State and transmitted by the Secretary of State to the Marshal of the District of Columbia, who posts the same. The list upon which the names of these domestic servants are placed is known as the State Department "White List", as distinguished from the "Blue List" which contains the names of diplomatic officers and members of their families. While the Federal Cases do not specifically hold that the immunity for domestic servants, under Section 252, is dependent upon registration on the White List under Section 254, there is strong intimation that such is the case. In *Trost v. Tompkins*, D. C. Mun. App. (1945), 44 A. 2d 226, *supra*, the formation of this White List both in England and the United States is explained in detail. In discussing Section 253, *supra*, it is there said, 44 A. 2d at page 229: "The plain implication of the language used is that *to secure the protection of his servants*, the ambassador or minister must register them, i.e., furnish their names to the State Department, and thereupon it becomes the duty of the Secretary of State to transmit the names so 'registered' to the marshal." (Emphasis supplied here.) *Carrera v. Carrera*, 1948, 84 U. S. App. D. C. 333, 174 Fed. 2d 496, was a suit for separate maintenance of herself and son brought by a wife against her husband, Amable H. Carrera, domestic servant of the Czechoslovakian Embassy. The State Department advised the court that the defendant pursuant to the provision of Section 254, *supra*, was on the White List, registered with the State Department. It was said in that case, 174 F. 2d at page 497: "The next contention of the

appellant in that the inclusion of Amable's name on the so-called 'White List' was not sufficient to bring him within the second clause of Section 254 which would extend to him the protection of Sections 252 and 253. * * * But here, the Secretary having certified Carrera's name as included in the list, judicial inquiry into the propriety of its listing was not appropriate." See also *Wheaton's International Law* (6th Ed.), p. 286; *International Law, Chiefly as Interpreted and Applied by the United States*, Second Revised Edition, Charles Chaney Hyde, Vol. II, pages 1273, 1274. Compare *U. S. v. Jeffers*, 26 Fed. Cases 596 (No. 15,471).

Section 252, *supra,* by plain words limits the immunity to suits against ministers and their domestics, to ministers "of any foreign prince or State, authorized and received as such by the President". There is nothing in this case to show that Colonel de Schinkel was so "authorized and received as such by the President". The method of presenting such proof is set out in *Compania Espanola v. The Navemar*, 303 U. S. 68, 58 S. Ct. 432, 82 L. Ed. 667. See also *Ex Parte Muir*, 254 U. S. 522, 41 S. Ct. 185, 65 L. Ed. 383; *Jarnvagsstyrelsen Kunglig v. Dexter & Carpenter, Inc.*, 300 Fed. 891; *The Pesaro*, 255 U. S. 216, 41 S. Ct. 308, 65 L. Ed. 592; In *re Baiz*, (1890), 135 U. S. 403, 421, 10 S. Ct. 854, 34 L. Ed. 222, *supra*. The aforequoted paper from Colonel de Schinkel was an unathenticated statement, allegedly signed by him without witnesses, affidavit, notarization, or seal thereto attached, and of course was not admissible in evidence. Code, Article 35, Sections 52, 53.

Finally, as the State Department of the United States has ruled that appellant is not entitled to diplomatic immunity, that ruling is binding on this Court. As above set forth, the certificate from the State Department to this Court states: "* * * Carl Haley does not have immunity under the sections of Federal law above quoted for the reason that there has been no official notification to the United States of any diplomatic *status,* hence he could not be accepted and received as such by the United

States." In *In re Baiz*, 1890, 135 U. S. 403, 10 S. Ct. 854, 862, 34 L. Ed. 222, *supra*, Jacob Baiz, a citizen of the United States who was a resident of New York City and the consul-general of the Republic of Guatmala, was sued in libel. The Supreme Court of the United States held that even in the absence of its minister, he was not its diplomatic representative or minister during such absence, and not entitled to diplomatic immunity from suit. Chief Justice Fuller in that case pointed out that the State Department when requested for a certificate of Mr. Baiz' status had politely declined to give the certificate desired, because it could not properly be done. He said: "We ought to add that while we have not cared to dispose of this case upon the mere absence of technical evidence, we do not assume to sit in judgment upon the decision of the executive in reference to the public character of a person claiming to be a foreign minister, and therefore have the right to accept the certificate of the State Department that a party is or is not a privileged person, and cannot properly be asked to proceed upon argumentative or collateral proof."

In *Carrera v. Carrera*, 84 U. S. App. D. C. 333, 174 Fed. 2d 496, 497, *supra*, it was said: "It is enough that an ambassador has requested immunity, that the State Department has recognized that the person for whom it was requested is entitled to it, and that the Department's recognition has been communicated to the court. 'The courts are disposed to accept as conclusive of the fact of the diplomatic status of an individual claiming an exemption, the views thereon of the political department of their government.' *II Hyde, International Law*, 1268." (*Hyde's International Law, Chiefly as Interpreted and Applied by the United States*, Second Revised Edition, Vol. II, p. 1268.) In *Trost v. Tompkins*, D. C. Mun. App., 44 A. 2d 226, *supra*, it is said at page 231: "The delicacy of the question, involving as it does the relations of our government with a friendly foreign nation, is such that the absence of a decision by the executive department charged with responsibility for

84

the conduct of our affairs abroad, is to be regretted. The usual rule is that 'Courts have no jurisdiction to decide political questions.' *Sevilla v. Elizalde,* 72 App. D. C. 108, 112 Fed. 2d 29." See also *Girardon v. Angelone,* 234 App. Div. 351, 254 N. Y. S. 657. In *United States v. Coplon et al,* U. S. D. C. S. D. New York, 84 Fed. Supp. 472, Judith Coplon and Valentine A. Gubitchev were indicted for violations of the espionage laws. Gubitchev was a citizen of the Union of Soviet Socialist Republics and a member of the staff of the Headquarters Planning Office of the Secretariat of the United Nations. He claimed diplomatic immunity thereby. The Court (Rifkind, J.) said in that case 84 F. Supp. at page 475: "The dispositive fact is that the State Department has declared to the Soviet Embassy by aide-memoire of March 24, 1949, and aide-memoire of April 29, 1949, that defendant does not enjoy diplomatic status. That is a political decision which the courts do not review. See In *Re Baiz,* 1890, 135 U. S. 403, 432, 10 S. Ct. 854, 34 L. Ed. 222; *Sullivan v. State of Sao Paolo,* 2 Cir. 1941, 122 F. 2d 355, 357-358. *United States v. Benner,* C. C. E. D. Pa. 1830, Fed. Cas. No. 14, 568; *United States v. Ortega,* C. C. E. D. Pa. 1825, Fed. Cas. No. 15,971; *United States v. Liddle,* C. C. E. D. Pa. 1808, Fed. Cas. No. 15,598." See also *Engelke v. Musmann,* 1928 Appeal Cases 433; In *re Suarez* (1918) 1 Chan., 176, 195, 199.

In a later case of *U. S. v. Coplon et al,* 88 F. S. 915, where Gubitchev also claimed diplomatic immunity the Court (Ryan, J.) said: "Furthermore, we have in this case the certification by the Department of State that the defendant does not enjoy diplomatic status, which, as Judge Rifkind held, is 'the dispositive fact.' *U. S. v. Coplon,* D. C., 84 F. Supp. at 475, citing cases. *Diplomatic status is a political question and a matter of state; the finding of the Secretary of State must be accepted unquestioned.* The courts of the United States are not alone in applying this rule. 'Thus in Great Britain, *Engelke v. Musmann,* 1928, A. C. 434, 435, in the United States, *United States v. Liddle,* 1808, Fed. Cas. No.

15,598; *United States v. Bennar*, 1830, Fed. Cas. No. 14,568, Baldw. 234; In *re Baiz*, 1890, 135 U. S. 403, 10 S. Ct. 854, 34 L. Ed. 222, and apparently in France Drtilek c. Barbier (1925), *Cour d'appel de Paris*, 53 Journal de droit international prive (1926), 638, the decision of the executive department as to whether a person is a member of a foreign mission or of its personnel is conclusive upon the courts.' *Research in International Law, Harvard Law School*, 1932 p. 76." (Emphasis Supplied.)

It was certainly not the intention that an American citizen should be immune from prosecution by merely submitting an unauthenticated request by his employer that immunity be extended when the State Department certifies that the defendant is not entitled to such immuniy. The judgment will be affirmed.

*Judgment affirmed, with costs.*