**VULCAN IRON WORKS, INC., S & S Machinery Co. and Vulcan Machine Tools, Inc., Plaintiffs,**

v.

**POLISH AMERICAN MACHINERY CORPORATION, Stanislauw Trzeciak, Stefan Mysliwiec, Metalexport, Aleksander Jung, Andrzej Diszy, Misczvskaw Nitefor, Wladyslaw Biela, Oswald Jeremias, Dalimpex Ltd., Defendants.**

No. M8–85.

United States District Court,
S. D. New York.

Nov. 14, 1979.

Fox, Glynn & Melamed, New York City, for plaintiffs; John R. Horan, Kathleen M. Kundar, New York City, of counsel.

Conboy, Hewitt, O'Brien & Boardman, New York City, for the Embassy of the Polish People's Republic and Inowolski and Golab; Aaron N. Wise, Timothy C. Quinn, Jr., New York City, of counsel.

LASKER, District Judge.

The plaintiffs served subpoenas on two employees of the Polish Commercial Counselor's Office in New York City, Anataliusz Inowolski and Wladyslaw Golab, seeking to depose them in connection with litigation pending in the United States District Court for the District of New Jersey. Inowolski and Golab refused to respond to the subpoenas, asserting that they are immune from judicial process by reason of their diplomatic status. The plaintiffs moved for an order holding Inowolski and Golab in contempt. We denied the motion, concluding that the Commercial Counselor's Office is a branch of the Polish Embassy rather than a consulate, that accordingly the diplomatic immunity of individuals connected to the Commercial Counselor's Office is to be determined by reference to the Vienna Convention on Diplomatic Relations[1] rather than

1. Done at Vienna April 18, 1961, [1972] 23 U.S.T. 3227, T.I.A.S. No. 7502, 500 U.N.T.S. 96, U.N.Doc. A/Conf. 20/13 (entered into force with respect to the United States December 13, 1972).

to the Polish Consular Convention,[2] and finally, that under Articles 31(2) and 37(2) of the Convention Inowolski and Golab are entitled to immunity as members of the "technical and administrative staff" of the Commercial Counselor's Office.[3] 472 F.Supp. 77 (S.D.N.Y.1979).

■ Plaintiffs move to reargue the motion. They press an argument that was not addressed by the parties earlier and was not considered by the court in reaching its conclusion that Inowolski and Golab are immune. This is not the function of reargument, which is to bring to the court's attention "matters or controlling decisions which counsel believes the court has overlooked," rather than to introduce new material or arguments. General Rule 9(m), Rules of the United States District Courts for the Southern and Eastern Districts of New York. We will treat plaintiffs' motion as one under Rules 59 or 60(b), Fed.R.Civ.P., and reconsider our prior decision in light of the new material before us.

Stated briefly, plaintiffs' new argument is that the evidence of record establishes that the State Department was never "notified" of Golab's appointment to the Commercial Counselor's Office, and that under the Vienna Convention an official is not entitled to immunity until and unless such notification has been received. Golab disputes this, and counters with the claim that even if plaintiffs are correct on the question of notification, he is immune by reason of a

---

**2.** Consular Convention between the United States and the Polish People's Republic, signed at Warsaw May 31, 1972, [1973] 24 U.S.T. 1233, T.I.A.S. No. 7642 (entered into force July 6, 1973).

**3.** Article 31 provides:

1. A diplomatic agent shall enjoy immunity from the criminal jurisdiction of the receiving state. He shall also enjoy immunity from its civil and administrative jurisdiction, except in the case of:

(a) a real action relating to private immovable property situated in the territory of the receiving state, unless he holds it on behalf of the sending state for the purposes of the mission;

(b) an action relating to succession in which the diplomatic agent is involved as executor, administrator, heir or legatee as a private person and not on behalf of the sending state;

(c) an action relating to any professional or commercial activity exercised by the diplomatic agent in the receiving state outside his official functions.

2. A diplomatic agent is not obliged to give evidence as a witness.

3. No measures of execution may be taken in respect of a diplomatic agent except in the cases coming under sub-paragraphs (a), (b) and (c) of paragraph 1 of this article, and provided that the measures concerned can be taken without infringing the inviolability of his person or of his residence.

4. The immunity of a diplomatic agent from the jurisdiction of the receiving state does not exempt him from the jurisdiction of the sending state."

Article 37 provides:

1. The members of the family of a diplomatic agent forming part of his household shall, if they are not nationals of the receiving state, enjoy the privileges and immunities specified in Articles 29 to 36.

2. Members of the administrative and technical staff of the mission, together with members of their families forming part of their respective households, shall, if they are not nationals of or permanently resident in the receiving state, enjoy the privileges and immunities specified in Articles 29 to 35, except that the immunity from civil and administrative jurisdiction of the receiving state specified in paragraph 1 of Article 31 shall not extend to acts performed outside the course of their duties. They shall also enjoy the privileges specified in Article 36, paragraph 1, in respect of articles imported at the time of first installation.

3. Members of the service staff of the mission who are not nationals of or permanently resident in the receiving state shall enjoy immunity in respect of acts performed in the course of their duties, exemption from dues and taxes on the emoluments they receive by reason of their employment and the exemption contained in Article 33.

4. Private servants of members of the mission shall, if they are not nationals of or permanently resident in the receiving state, be exempt from dues and taxes on the emoluments they receive by reason of their employment. In other respects, they may enjoy privileges and immunities only to the extent admitted by the receiving state. However, the receiving state must exercise its jurisdiction over those persons in such a manner as not to interfere unduly with the performance of the functions of the mission."

State Department "suggestion of immunity."

■ The first question to be addressed is whether immunity is indeed conditioned on notification. Article 10 of the Vienna Convention provides:

"1. The Ministry for Foreign Affairs of the receiving state, or such other ministry as may be agreed, shall be notified of:
(a) the appointment of members of the mission, their arrival and their final departure or the termination of their functions with the mission  . .  .."

This provision establishes a requirement that the State Department be notified of the appointment of individuals to positions with foreign missions in the United States, but it does not, on its face, condition diplomatic immunity on compliance with the notification requirement. However, it is reasonable to assume that the drafters of the Convention intended that recognition of an individual's status as a member of a diplomatic mission, and recognition of the privileges and immunities attendant on such status, should depend on the formal notification required by Article 10. For several reasons we conclude that this is what the drafters intended.

First, Article 39(1) of the Convention, the only article that deals explicitly with the issue of when immunity attaches to the person of a foreign diplomat, provides:

"Every person entitled to privileges and immunities shall enjoy them from the

moment he enters the territory of the receiving state on proceeding to take up his post or, if already in its territory, from the moment when his appointment is notified to the Ministry for Foreign Affairs or such other ministry as may be agreed."

Under this provision notification is required before persons who are present in the receiving state when appointed to a diplomatic mission can enjoy immunity. There is no apparent reason why the receiving state should recognize the immunity of individuals prior to notification of their appointment simply because they entered the territory subsequent to their appointment, when it would not recognize their immunity if they had been within its territory at the time of their appointment. That Article 39(1) does not expressly state that notification is a prerequisite in all cases seems due to the fact that the Convention contemplates notification prior to or contemporaneously with an official's entry into the receiving territory "on proceeding to take up his post," the moment from which an official entering the country after appointment does enjoy immunity under Article 39(1).

■ Second, prior federal statutes respecting diplomatic immunity, which were repealed in favor of the Vienna Convention's narrower and more precise standards,[4] required notification as a condition

<hr>

4. *Compare* Act of April 30, 1790, ch. 9 §§ 25–27, 1 Stat. 117–18 (previously codified as 22 U.S.C. §§ 252–254), *repealed*, Pub.L. No. 95–393, § 3(a)(1), 92 Stat. 808 (1978), *with* Diplomatic Relations Act, Pub.L. No. 95–393, 92 Stat. 808 (1978) (codified at 22 U.S.C. §§ 254a–254e, 28 U.S.C. §§ 1251, 1351, 1364). Section 3(b) of the Diplomatic Relations Act, 22 U.S.C. § 254b, provides that (subject to the President's authority under § 4 of the Act, *id.* § 254c, to reciprocally extend more or less favorable terms "as he may determine") "[m]embers of the mission of a sending state which has not ratified the Vienna Convention, their families, and the diplomatic couriers of such state, shall enjoy the privileges and immunities specified in the Vienna Convention." (The immunity of members of missions of sending states that have ratified the Vienna Convention is established, of course, under the Convention itself.)

Former sections 252–254, which were enacted by the First Congress and derived from the English Diplomatic Privilege Act of 1708, 7 Anne c. 12, provided:

"§ 252. Suits against ministers and their domestics prohibited

Whenever any writ or process is sued out or prosecuted by any person in any court of the United States, or of a State, or by any judge or justice, whereby the person of any ambassador or public minister of any foreign prince or State, authorized and received as such by the President, or any domestic or domestic servant of any such minister, is arrested or imprisoned, or his goods or chattels are distrained, seized, or attached, such writ or process shall be deemed void.

§ 253. Penalty for wrongful suit

Whenever any writ or process is sued out in violation of section 252 of this title, every

of immunity. Act of April 30, 1790, ch. 9 §§ 25–27, 1 Stat. 117–18 (previously codified as 22 U.S.C. §§ 252–254), *repealed,* Pub.L. No. 95–393, § 3(a)(1), 92 Stat. 808 (1978); *see Carrera v. Carrera,* 174 F.2d 496, 498 (D.C.Cir. 1948); *Trost v. Tompkins,* 44 A.2d 226, 229–31 (Mun.Ct.App.D.C.1945); *Haley v. State,* 200 Md. 72, 88 A.2d 312, 316 (Md. 1952). In the absence of any language in the Vienna Convention disapproving of prior practices, it is reasonable to look to those practices, which had been in effect in the United States for some twenty years when the United Nations Conference on Diplomatic Intercourse and Immunities met in Vienna in 1961, in divining the intent of the conferees.

Finally, the Department of State apparently considers notification a prerequisite to recognition of a foreign official's immunity. In a letter responding to the court's request for the Department's views on the proper interpretation of the Vienna Convention, the Legal Adviser's office described the normal notification procedure, and indicated that compliance with that procedure will confer diplomatic immunity. The Department's letter reads:

"[T]he normal procedure is for the sending state to notify the receiving state in advance of the intended assignment of a member of a mission, at which time an appropriate visa is issued by the U.S. Embassy in the sending country. That visa notifies the Department of State that the individual will arrive in the United States and will be accepted at that time as an official attached to the sending state's diplomatic mission. Im-

mediately upon the actual arrival of the individual, the Embassy of the sending state is required to submit a Department of State form to the Office of Protocol, setting forth the individual's curriculum vitae. After that form is processed, appropriate identification and other documents will be issued. To summarize, *if proper visa application procedures and subsequent registration procedures are taken, the diplomatic mission employee should enjoy immunity from the moment of entry into the United States."* (emphasis supplied)

Although it is the court's function to interpret the law, and not that of the State Department, the Department's views are instructive, since it is the agency most intimately involved with procedures under the Vienna Convention.

■ We conclude that under the Vienna Convention Golab is immune from the civil jurisdiction of the United States only if the State Department was properly notified of his appointment as a member of the administrative and technical staff of the Commercial Counselor's Office. We turn, then, to the second question to be addressed, which is whether the State Department was so notified.

In support of their argument that the State Department was never notified of Golab's appointment, the plaintiffs rely on a telex dated January 2, 1979 from the State Department to plaintiffs' counsel, which states:

"W. GOLAB—DEPARTMENT OF STATE HAS NO RECORD ON THIS INDIVIDUAL."

---

person by whom the same is obtained or prosecuted, whether as party or as attorney or solicitor, and every officer concerned in executing it, shall be deemed a violator of the laws of nations and a disturber of the public repose, and shall be imprisoned for not more than three years, and fined at the discretion of the court.

§ 254. Exceptions as to suits against servants, etc., of minister; listing servants

Sections 252 and 253 of this title shall not apply to any case where the person against whom the process is issued is a citizen or inhabitant of the United States, in the service of an ambassador or a public minister, and

the process is founded upon a debt contracted before he entered upon such service; nor shall section 253 of this title apply to any case where the person against whom the process is issued is a domestic servant of an ambassador or a public minister, unless the name of the servant has, before the issuing thereof, been registered in the Department of State, and transmitted by the Secretary of State to the marshal of the District of Columbia, who shall upon receipt thereof post the same in some public place in his office. All persons shall have resort to the list of names so posted in the marshal's office, and may take copies without fee."

Golab's counsel answers that an exchange of notes between the Polish Embassy and the State Department establishes that notification did occur. The first note, dated December 22, 1978, reads, in part:

"The Embassy of the Polish People's Republic presents its compliments to the Department of State, Office of Protocol, and has the honor to request that the certification of immunity be confirmed for Messrs. Anatoliusz Inowolski and Wladyslow Golab . . . .

. . . . .

The Polish Embassy requests the Department of State to take necessary action so that the immunity of Messrs. Inowolski and Golab is fully respected."

A second note from the Polish Embassy, dated January 16, 1979, renews the request made in the first. By note dated January 30, 1979, the State Department responded. Because of its importance to the issues raised on this motion, the State Department's note is reproduced in full:

"The Department of State refers to the notes of the Embassy of the Polish People's Republic dated December 22, 1978 and January 16, 1979, relating to the matter of certification of immunity for Messrs. A. Inowolski and W. Golab, officials of the Office of the Polish Commercial Counselor in New York, New York. The Embassy has advised the Department through the aforementioned notes and through meetings that the two officials have been subpoenaed to give testimony and to produce records and documents of the Office of the Commercial Counselor in connection with the case of *Vulcan Iron Works, Inc., et al. v. Polish American Machinery Corporation, et al.,* Civil Action File No. M8–85, U.S. District Court for the Southern District of New York. The Embassy requested the Department to take the steps necessary to insure the immunity of Messrs. Inowolski and Golab in connection with this litigation.

The Department of State herewith confirms that the Office of the Polish Commercial Counselor is a recognized official office of the Polish People's Republic in the United States. The Department has formally extended to the head of that office the status of a diplomatic agent and the privileges and immunities attendant to that status. The Department further recognizes that the documents and records utilized by the Commercial Counselor and maintained in his office in connection with the conduct of official mission business are inviolable and, hence, are not subject to being subpoenaed or otherwise produced by external means without the consent of the Polish Commercial Counselor or other person authorized to act on his behalf or on behalf of the Polish People's Republic.

The Department of State further recognizes immunity from judicial process for employees of the Office of the Polish Commercial Counselor to the extent that inviolable documents and records are sought to be produced through subpoenas issued to such persons and to the extent that their testimony is sought in connection with matters for which immunity is extended to the Polish Commercial Counselor.

Department of State

Washington, January 30, 1979

/s/ KEM"

This note does not state that the Department had been earlier notified of Golab's appointment pursuant to Article 10, and Golab does not rely on it for this—he contends that the note itself demonstrates that the State Department had been notified by the Embassy's notes of December 22 and January 16, and in "meetings," that he was an official connected with the Commercial Counselor's Office. It is important to observe, however, that neither of the Polish Embassy's notes purports formally to notify the State Department of Golab's appointment, nor does either of them invoke Article 10. They simply name Golab, recite his position with the Commercial Counselor's Office, and request the State Department to "certify" his immunity. The question is whether such informal "notification" is sufficient under Article 10 of the Convention.

■ The letter from the Legal Adviser's office quoted above describes the "normal procedure" for notifying the State Department of the appointment of a member of a diplomatic mission. Compliance with that accepted procedure clearly constitutes adequate notification. To what extent can less formal procedures be relied on to establish notification? Golab's counsel contends that "[a]ny notification which the Department of State regards as sufficient, is all that is required under Article 10, Vienna Convention,"[5] and argues that the State Department's note indicates that the Department considers the "notification" here sufficient under Article 10. Apart from the fact that the State Department's note makes no such representation, explicitly or implicitly, we believe that Golab's contention that the State Department has unbridled discretion to deem notification sufficient or insufficient in individual cases is in error.

Of course the State Department can adopt whatever procedures it deems to be the most efficacious means of effecting notification. But there must be serious questions as to the extent to which the Department can vary its requirements in individual cases ex post facto, especially when the rights and prerogatives of third parties (such as the plaintiffs here) may be affected. Moreover, if the State Department does have discretion to determine in each case whether notification is adequate, it could refuse to recognize the immunity of individuals who had fully complied with accepted procedures. We conclude that the State Department's discretion to accept or deny notification is not unlimited.

■ It is unnecessary here, however, to specify the variation permitted from the procedures adopted or accepted by the State Department. We hold only that based on the record before the court, the notice that the State Department received of Golab's status was not "notification" within the meaning of Article 10 of the Vienna Convention. First, none of the communications on which Golab relies purports to be "notification"—none even uses the word, as might be expected where a term of art is involved. Instead, each bears the earmarks of a request for a "suggestion of immunity." Second, despite these communications (however characterized), the State Department has nowhere indicated that it was in fact notified of Golab's appointment.

■ One further issue respecting notification must be resolved. Golab's counsel seeks to introduce into the record copies of several documents that he personally located in the files of the Polish Embassy in Washington, D.C., documents which counsel claims establish that the State Department was formally notified of Golab's appointment, first in June, 1977, and again in March, 1979, after Golab's immunity had become an issue, and following the exchange of notes discussed above. However, apparently because the Polish Ministry of Foreign Trade in Warsaw will not permit an official of the Polish Embassy or of the Commercial Counselor's office to submit an affidavit in this proceeding, the documents are not accompanied by the sworn statement of anyone with personal knowledge of their preparation or use. The mere fact that the documents were found in the files of the Polish Embassy is not sufficient "to support a finding that the matter in question is what its proponent claims," that is, that the documents were actually sent to the State Department in accordance with State Department procedures, for the purpose of notifying it of the appointment of Golab to a post with the Commercial Counselor's Office. Accordingly, the documents are not admissible. Fed.R.Evid. 901. Moreover, in the absence of the precise recitation necessary to identify and authenticate them the documents would be insufficient to establish that the State Department was actually notified even if they were admitted. Since the facts relating to the purported notification of Golab's appointment are within the exclusive knowledge of Golab and his employers, they bear

---

5. Memorandum of Law in Opposition to Plaintiffs' Motion for Reargument at 9.

the burden of establishing notification, a burden they have not carried.

■■■ The third question which must be addressed is whether the State Department has "suggested" that Golab is immune. Golab asserts that the State Department's note of January 30, 1979, quoted in full above, constitutes such a suggestion. Although there is dicta suggesting that a suggestion of diplomatic immunity would be dispositive, *see In re Baiz*, 135 U.S. 403, 431–32, 10 S.Ct. 854, 34 L.Ed. 222 (1890); *Caravel Office Building Co. v. Peruvian Air Attache*, 347 A.2d 280, 283–84 (Ct.App.D.C. 1975); *Cocron v. Cocron*, 84 Misc.2d 335, 375 N.Y.S.2d 797, 804–05 (Sup.Ct. Kings Co. 1975), Golab relies primarily on cases involving suggestions of sovereign immunity, e. g., *Republic of Mexico v. Hoffman*, 324 U.S. 30, 65 S.Ct. 530, 89 L.Ed. 729 (1945); *Isbrandtsen Tankers, Inc. v. President of India*, 446 F.2d 1198 (2d Cir.), *cert. denied*, 404 U.S. 985, 92 S.Ct. 452, 30 L.Ed.2d 369 (1971). These cases were effectively overruled by the Foreign Sovereign Immunities Act of 1976, Pub.L. No. 94–583, 90 Stat. 2891 (codified at 28 U.S.C. §§ 1330, 1391(f), 1441(d), 1602–1611), a "principal purpose" of which was "to transfer the determination of sovereign immunity from the executive branch to the judicial branch, thereby reducing the foreign policy implications of immunity determinations and assuring litigants that these often crucial decisions are made on purely legal grounds and under procedures that insure due process," H.R. Rep. No. 1487, 94th Cong., 2d Sess., 7 (1976), *reprinted in* 5 [1976] U.S.Code Cong. & Admin.News pp. 6604, 6606; *see also* Lowenfeld, Claims Against Foreign States—A Proposal for Reform of United States Law, 44 N.Y.U.L. Rev. 901 (1969). The same considerations suggest that issues of diplomatic immunity ought to be resolved by the courts rather than the State Department. However, we need not decide this question because we conclude that the State Department's note of January 30, 1979, was not a suggestion of immunity.

Although the note recites that the Polish Embassy had requested that the State Department "take the steps necessary to insure the immunity of Messrs. Inowolski and Golab in connection with this litigation," it does not purport to be a formal suggestion of immunity. It simply states that the Department "recognizes immunity from judicial process for employees of the Office of the Polish Commercial Counselor . . . to the extent that their testimony is sought in connection with matters for which immunity is extended to the Polish Commercial Counselor." This is nothing more than an abbreviated restatement of the provisions of the Vienna Convention. It applies to Golab only to the extent that he is in fact an employee of the Commercial Counselor, which the note assumes he is, and only to the extent that Golab has complied with the prerequisites to immunity contained in the Convention, including notification, an issue which the note does not address. The note simply states the law as contained in the Vienna Convention; it is not a "suggestion of immunity."

■■■ In sum, we find on the record before us that the State Department was not notified of Golab's appointment to the Polish Commercial Counselor's Office, as required under Article 10 of the Vienna Convention; that in the absence of such notification he is not entitled to the immunity accorded diplomats under the Convention; and that no "suggestion of immunity" has been made by the State Department. Accordingly, on this supplemental record we find, contrary to our earlier determination on a less complete record, that Golab's refusal to appear for his deposition was not excused. However, since his refusal to appear was under colorable authority of law, we decline to find him in contempt at this time, or to order him to compensate the plaintiffs for the expenses they have incurred on this motion. Nevertheless, he is ordered to appear and testify in compliance with the subpoena served on him promptly upon the filing of this memorandum, at a mutually convenient time and place to be arranged by the parties.

In closing, we note that although our decision has the effect of compelling testi-

mony from an individual who is clearly within the class of those whom the Vienna Convention was intended to protect from just such compulsion, this result is hardly unfair, since it has been and is within the power of Golab's employers to ensure his immunity, either by properly notifying the State Department of his appointment, or by demonstrating by competent evidence that the State Department has already been so notified.