**Carolyn M. WINDSOR, Plaintiff,**

v.

**STATE FARM INSURANCE COMPANY, Defendant.**

Civ. A. No. 80–622.

United States District Court, District of Columbia.

Feb. 10, 1981.

### MEMORANDUM

SIRICA, District Judge.

This matter is before the Court on the defendant's motion to dismiss the complaint

---

for failure to state a claim, or in the alternative, for lack of jurisdiction.

The factual circumstances underlying the plaintiff's complaint are relatively simple. It is alleged that on March 12, 1977, the unknown operator of an automobile negligently caused the vehicle which he was driving to strike and injure the plaintiff, a pedestrian. According to the complaint, the automobile was operated with the permission of its owner, a member of a diplomatic mission, who was insured by the defendant, State Farm Insurance Company.

Neither the operator nor the owner of the automobile was named as a defendant by the plaintiff. Instead, this action was brought directly against the insurance carrier pursuant to Section 7 of the Diplomatic Relations Act,[1] which section has been codified at 28 U.S.C. § 1364 (Supp. II 1978).[2]

The Diplomatic Relations Act (the Act) was designed, in part, to deal with the inequities associated with the immunity of members of diplomatic missions in civil court proceedings. In that regard, Section 7 of the Act, under which the plaintiff is proceeding, creates a direct cause of action against those who insure members of diplomatic missions, eliminates the insurer's defense that the insured was immune from suit, and confers exclusive and original jurisdiction upon the federal district courts to entertain such actions against insurers.

The effective date for this legislation was set forth in Section 9 of the Act as "the end of the ninety-day period beginning on the date of its enactment." Since the Act was approved on September 30, 1978, the incident at issue predated the effective date by approximately 21 months. Accordingly, unless Congress intended the Act to operate on transactions which occurred or rights and obligations which existed before its passage, that is, to have retroactive effect, it can have no application in the present instance. If the Act does not apply, the plaintiff's direct cause of action against the insurer is not available thereunder, nor does the Court have authority to proceed, since jurisdiction has been premised solely on 28 U.S.C. § 1364. In view of this, the plaintiff has taken the position that Congress intended the Act to be retrospective while the defendant has advanced the opposite point of view.[3]

It is a well-established principle that prospective rather than retrospective application is the preferred judicial treatment of legislation. *In re District of Columbia Workmen's Compensation Act,* 554 F.2d 1075, 1079 (D.C.Cir.), *cert. denied,* 429 U.S. 820, 97 S.Ct. 67, 50 L.Ed.2d 81 (1976); *De Rodulfa v. United States,* 461 F.2d 1240,

---

1. Pub.L.No. 95-393, 92 Stat. 808 (1978). The Diplomatic Relations Act is codified at 22 U.S.C. §§ 254a–254e and 28 U.S.C. §§ 1251, 1351, and 1364 (Supp. II 1978).

2. That section provides:
   Sec. 7. (a) That chapter 85 of title 28, United States Code, is amended by the addition of the following new section:
   "§ 1364. Direct actions against insurers of members of diplomatic missions and their families
   "(a) The district courts shall have original and exclusive jurisdiction, without regard to the amount in controversy, of any civil action commenced by any person against an insurer who by contract has insured an individual, who is a member of a mission (as defined in the Vienna Convention on Diplomatic Relations) or a member of the family of such a member of a mission, or an individual described in section 19 of the Convention on Privileges and Immunities of the United Nations of February 13, 1946, against liability for personal injury, death, or damage to property.
   "(b) Any direct action brought against an insurer under subsection (a) shall be tried without a jury, but shall not be subject to the defense that the insured is immune from suit, that the insured is an indispensable party, or in the absence of fraud or collusion, that the insured has violated a term of the contract, unless the contract was cancelled before the claim arose."
   (b) The chapter analysis of chapter 85 of title 28, United States Code, is amended by adding after the item relating to section 1363, the following new item:
   "1364. Direct actions against insurers of members of diplomatic missions and their families."

3. The terms "retroactive" and "retrospective" are generally regarded as synonymous in judicial usage and are used interchangeably. *See* Sutherland, Statutory Construction, § 41.01 (1973).

1247 (D.C.Cir.), *cert. denied*, 409 U.S. 949, 93 S.Ct. 270, 34 L.Ed.2d 220 (1972). "Retroactivity," the Supreme Court has declared, "even when permissible, is not favored, except upon the clearest mandate," *Claridge Apartments Co. v. Commissioner*, 323 U.S. 141, 164, 65 S.Ct. 172, 185, 89 L.Ed. 139 (1944), and this maxim has often been reiterated in this Circuit. *See, e. g., In re District of Columbia Workmen's Compensation Act, supra; De Rodulfa v. United States, supra; Kalis v. Leahy*, 188 F.2d 633, 634–35 (D.C.Cir.) *cert. denied*, 341 U.S. 926, 71 S.Ct. 797, 95 L.Ed. 1358 (1951); *Neild v. District of Columbia*, 110 F.2d 246, 254 (D.C. Cir.1940).

Accordingly, "statutes are not to be applied retroactively 'unless the words used are so clear, strong and imperative that no other meaning can be annexed to them or unless the intention of the legislature cannot otherwise be satisfied.' " *Boilermakers Int'l v. NLRB*, 316 F.2d 373, 375 (D.C.Cir. 1963), quoting *United States Fidelity & Guaranty Co. v. United States ex rel. Struthers Wells Co.*, 209 U.S. 306, 314, 28 S.Ct. 537, 539, 52 L.Ed. 804 (1908).

This canon is of special importance when the legislation in question affects substantive rights and is contrary to pre-existing economic expectancies. *De Rodulfa v. United States, supra.* Therefore, it is particularly true that "a retrospective operation will not be given to a statute which interferes with antecedent rights . . . unless such be 'the unequivocal and inflexible import of the terms, and the manifest intention of the legislature.' " *Greene v. United States*, 376 U.S. 149, 160, 84 S.Ct. 615, 621, 11 L.Ed.2d 576 (1964), quoting *Union Pacific R.R. v. Laramie Stockyards Co.*, 231 U.S. 190, 199, 34 S.Ct. 101, 102, 58 L.Ed. 179 (1913).

In view of these prerequisites to retroactive application, the Court's analysis must begin with the fundamental rule of law that the meaning and intent of a statute is to be sought first in the language in which it is framed. If that language is plain and unambiguous, then there is no need to enlist the rules of interpretation, and the duty of the court is to enforce the act according to its terms. *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917). However, in the present instance, the imperative character necessary to demonstrate retroactive intent cannot be assigned to the words of the Act. Neither Section 7 nor any of the other sections of the Act contains any specific language addressed to retroactive application.

Of course, congressional intent may not necessarily be reflected in the language of a single sentence or a particular section of an act. Instead, it may be demonstrated by the language and provisions of an act when read as a whole. *Philbrook v. Glodgett*, 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975). When the various sections of an act are read in conjunction with one another, a comprehensive statutory scheme reflecting the intent of Congress may emerge which was not apparent from a reading of the various sections standing by themselves.

Nevertheless, in the case at hand, the most that is suggested in a reading of the Act as a whole is an intended *prospective* application for Section 7. Section 5 of the Act [4] continues the long-standing concept of diplomatic immunity by providing for the dismissal of any action or proceedings brought against an individual entitled to such protection. Naturally, diplomats are at times negligent, and their immunity created the potential for inequitable situations in which the victims of their negligence had no redress in the courts. A plain reading of Sections 6 and 7 of the Act reveals a congressional intent to remedy the potential inequities created by this grant of immuni-

---

4. Section 5 of the Act has been codified at 22 U.S.C. § 254d (Supp. II 1978) and provides:
   Any action or proceeding brought against an individual who is entitled to immunity with respect to such action or proceeding under the Vienna Convention on Diplomatic Relations, under section 3(b) or 4 of this Act, or under any other laws extending diplomatic privileges and immunities, shall be dismissed. Such immunity may be established upon motion or suggestion by or on behalf of the individual, or as otherwise permitted by law or applicable rules of procedure.

ty. Section 6 of the Act[5] requires the President to "establish liability insurance requirements . . . relating to the risks arising from the operation in the United States of any motor vehicle, vessel or aircraft" by an individual clothed with diplomatic immunity. In conjunction with this provision, those with diplomatic immunity are required to comply with the insurance obligations established by the President, and he is given authority to ensure their compliance. Section 7 seizes upon this insurance requirement and establishes a direct cause of action against insurers while eliminating their use of the defense of the insured's immunity.

It appears then that Congress intended for these sections to serve together to alleviate the inequities associated with diplomatic immunity by (1) requiring diplomats to be insured and (2) making their insurers directly liable. Since the insurance obligations contemplated by direct actions under Section 7 were to be *created* by Section 6 of the Act, there is implicit in this remedy the idea of prospective application. Accordingly, it is reasonable to infer that Congress intended the provisions of Section 7 to apply prospectively to the insurance requirements established by Section 6. Although, a prospective intent does not necessarily indicate that retrospective application of a statute is foreclosed, *see* Sutherland, Statutory Construction § 41.01 (1973), in this instance, these two sections, taken together, do suggest an absence of retrospective intent. This conclusion is further supported by the fact that a reading of the Act as a whole fails to suggest any retroactive application of its provisions. Since the Act by its terms does not explicitly or implicitly suggest retroactive application, those terms cannot be construed as a clear and imperative mandate from Congress in favor of retroactivity.

Despite this, the plaintiff suggests that the manifest intention of the legislature is to be found in the legislative history of the Act. The Court does not agree. While resort may be had to the legislative history when a statute is ambiguous, *Aviation Consumer Action Project v. Washburn*, 535 F.2d 101, 106 (D.C.Cir.1976), retroactive effect will only be assigned to a statute when required by its explicit language or necessary implication therefrom. *Kalis v. Leahy, supra* at 635. Therefore, the need to resort to the legislative history, in and of itself, suggests that the plaintiff should not prevail.

Nevertheless, even assuming that the Court should look to the legislative history of the statute in this instance, such an examination fails to establish the clear intent of Congress to bestow retroactive effect upon the Act. As evidence of a clear mandate from Congress, the plaintiff relies primarily upon three passages from the final debate on the floor of the House of Representatives concerning H.R. 7819, 95th Cong., 2d. Sess. (1978), the bill which became the Diplomatic Relations Act.

The first of these passages reflects a portion of the lengthy remarks of Representative Fascell, a sponsor of the legislation, who was attempting to explain the purposes and provisions of the bill. Midway

---

5. Section 6 of the Act has been codified at 22 U.S.C. § 254e (Supp. II 1978) and provides:

(a) Each mission, members of the mission and their families, and individuals described in section 19 of the Convention on Privileges and Immunities of the United Nations of February 13, 1946, shall comply with any requirement imposed by the regulations promulgated by the President pursuant to subsection (b).

(b) The President shall, by regulation, establish liability insurance requirements to be met by each mission, members of the mission and their families, and individuals described in section 19 of the Convention on Privileges and Immunities of the United Nations of February 13, 1946, relating to risks arising from the operation in the United States of any motor vehicle, vessel, or aircraft.

(c) The President shall take such steps as he may deem necessary to insure that each mission, members of the mission and their families, and individuals described in section 19 of the Convention on Privileges and Immunities of the United Nations of February 13, 1946, who operate motor vehicles, vessels or aircraft in the United States comply with the requirements established pursuant to subsection (b).

through his remarks, Representative Fascell stated:

So, if there are any questions about whether or not there is any need for this legislation, let me point out that although the cases are not numerous, they are distressing. Only two weeks ago we had another tragedy where an elderly Washingtonian was struck by a hit-and-run driver while he was crossing an intersection with the light in his favor. Fortunately somebody got the diplomatic license number. But without this legislation there will be absolutely no recourse except an ex gratia payment by the government if the Congress wished it. With this legislation in effect, you would have the requirement that the diplomatic community would have to take out liability insurance and the American citizen who was hurt would have recourse through a suit against the diplomat and through direct action against the insurer. We would certainly not see the tragic situation that exists today in the Washington area and other places in the United States where Americans cannot even go into court against diplomats.[6]

The Court does not read this statement as a clear indication that the bill was to have retroactive effect. To be sure, Representative Fascell referred to a recent incident highlighting the diplomatic immunity problem. Yet, read in the context of the entire passage, this reference appears to have been intended merely as an illustration of the nature of the problem rather than a suggestion that any previously injured individual was specifically to become a beneficiary of the bill.

The plaintiff also points to passages from the same debate which reflect the remarks of Representatives Fisher and Buchanan, who were co-sponsors of the legislation. Their remarks came in response to those of other representatives, who had suggested during the debate that H.R.7819 be aban-

doned in favor of a similar bill, H.R.7679 in the belief that the latter went further to protect the rights of insurers.[7] Concerned with the prospect of delay in the enactment of his bill, Representative Fisher made the following statement:

Mr. Speaker, I rise in support of this bill and in support of the statement made by my distinguished friend. This legislation is long overdue. It is, in fact, many, many years overdue.

The case for it is clear. The House bill went through here with no opposition whatsoever. A great deal of publicity has been given to this bill and to various tragedies its passage would alleviate, one of which my colleague cited—an accident out on Connecticut Avenue a couple of weeks ago.[8]

As in the case of Representative Fascell's comments, these remarks are most properly read as indicating the type of problem associated with diplomatic immunity, rather than specifically suggesting application of this legislation to previous incidents.

The third passage cited by the plaintiff in support of its position contains the statement of Representative Buchanan during the same debate. His remarks echoed the concern of Representative Fisher that his bill would either be delayed or abandoned in favor of the competing bill, H.R.7679, which was reported from the House Committee on the Judiciary. In this regard, he stated:

Our colleagues on the Committee on the Judiciary have made a persuasive case, and yet I would concur with the remarks of the gentleman from Virginia (Mr. Fisher) and our distinguished chairman of the subcommittee.

We are talking here about a relative handful of cases—only about 14 at the present time—and if the cost of claims against the insurance company in that limited number of cases spread among the whole pool of those insured is so

---

**6.** 124 Cong.Rec. 9946–47 (daily ed. Sept. 18, 1978).

**7.** While this bill was favorably reported to the House, 124 Cong.Rec. 7791 (daily ed. Aug. 2,

1978) (Committee on the Judiciary, Mr. Danielson), it was never enacted into law.

**8.** 124 Cong.Rec. 9948 (daily ed. Sept. 18, 1978).

spread, I cannot believe it can have a substantial impact on the rates. We have American citizens who are not protected now and I hesitate to delay that needed protection for American citizens over some contingency that may or may not occur. We have a record of cases where Americans have been injured and there has been no reimbursement because of diplomatic immunity. I think it is time to act. I therefore urge adoption of this legislation.[9]

Once again, there is reference to existing incidents. However, from the context of his remarks, it is evident that Representative Buchanan made mention of these incidents only to demonstrate that H.R.7819, the bill which he was sponsoring, would not have a significant adverse impact on the rates of insurance companies.

Furthermore, as with the remarks of Representative Fisher, it is apparent that Representative Buchanan's statement was prompted by a sense of urgency as to the need to provide a solution to the diplomatic immunity problem. Yet, had they intended the bill to be retroactive, it is difficult to see why they would have felt this urgency, since the Act would then have provided for pre-existing causes of action.

Accordingly, it is the view of the Court that the mention of existing incidents in these passages does not reflect a clear intent on the part of the sponsors of this legislation to have it apply retroactively. Instead, these explanatory remarks are most properly read as illustrating the nature of the inequities associated with diplomatic immunity and expressing a need to temper their severity.

While the remainder of the legislative history does not lend support to the retroactive application of Section 7,[10] the plaintiff does make the additional argument that public policy favors providing a remedy for those who have been injured through the fault of another. While this argument has strong emotional appeal, particularly in a case such as this, it must give way to the competing public policies underlying the grant of diplomatic immunity and disfavoring retroactive application of statutes affecting pre-existing economic expectancies.

In conclusion, the language of the Diplomatic Relations Act, whether viewed in its express terms or in the context of the Act taken as a whole, does not contain the indications necessary to establish an intended retroactive application of Section 7, now codified as 28 U.S.C. § 1364. Similarly, an examination of the legislative history fails to establish any clear congressional intent in favor of retroactive application. For these reasons, the direct cause of action created by the statute is not available to the plaintiff, and the Court does not have authority to act, since jurisdiction has been premised solely on 28 U.S.C. § 1364. Accordingly, the complaint must be dismissed.

---

**9.** 124 Cong.Rec. 9950 (daily ed. Sept. 18, 1978).

**10.** In fact, the repeated comments throughout the legislative history that the Act created a substantive right of an injured party to proceed directly against the insurer of a diplomat would suggest that no retroactive effect was intended. *See, e. g.,* 124 Cong.Rec. S13696 (daily ed. Aug. 17, 1978) (remarks of Senator Sarbanes); 124 Cong.Rec. S13697 (daily ed. Aug. 17, 1978) (remarks of Senator Thurmond); S.Rep.No.1108, 95th Cong., 2d Sess. 1, reprinted in [1978] U.S. Code & Cong.Ad.News 1935, 1941, 1942.

It should also be noted that the defendant has made reference to a specific denial of retroactive application in H.R.Rep.1410, 95th Cong., 2d Sess. 5 (1978). However, this report of the House Judiciary Committee was offered in connection with H.R.7679, not H.R.7819, and the former was never enacted into law. *See* note 7, *supra.* While the two bills were reported contemporaneously and contained similar provisions, the legislative history of H.R.7679, apart from its internal reasoning, would be of doubtful value in interpreting H.R.7819 and is not relied upon by the Court in its analysis.