1810.
DECEMBER.

Davis
vs
The State

Davis vs. The State.

An assault, with intent to commit the crime of sodomy, is within the act of 1793, ch. 57, and is thereby punishable.

As the judgment may be either at common law, or under the act of assembly, the conclusion in the indictment, *contra formam statuti,* is not improper.

The crime of sodomy is too well known to be misunderstood, and too disgusting to be defined farther than by merely naming it; it is unnecessary therefore to lay the *carnaliter cognovit* and do in the indictment.

The court of oyer and terminer, &c. for Baltimore county, have an undoubted power to order the record of proceedings on an indictment, to be transmitted to the court, the party charged having previously complied with the directions of the act of 1805, ch. 55, 65

The criminal court of Baltimore county, altho' denominated the court of oyer and terminer, &c. must be considered as a branch of Baltimore county court, exercising criminal jurisdiction only, which is invested in all the other county courts.

Neither party can appeal from the decision of the court on an application for a removal of the suit to another county court.

Where an offence is punishable either at common law, or under an act of assembly, and the common law judgment is entered, but it stated to be according to the act of assembly—

Held, that the unmeaning expressions that follow the judgment of the court, are to be rejected as surplusage.

As to the punctuation of the *tenth* section of the act of 1793, *ch,* 57.

ERROR to the Court of Oyer and Terminer, &c. for Baltimore county. An indictment was found at September term 1810, for assaulting, and attempting to commit Sodomy, on the body of W C. The indictment contained two counts. The *first* count stated, that *Davis,* not having the fear of God before his eyes, but being moved and seduced by the instigation of the Devil, on, &c. with force and arms at, &c. in and upon one W C, a youth of the age of 19 years, in the peace of God, and of the state of *Muryland,* then and there being, did make an assault, and him the said W C, then and there did beat, wound, and illtreat, with an intent that most horrid and detestable crime, (among christians not to be named,) called Sodomy, with him the said W C, and against the order of nature, then and there feloniously, wickedly and devilishly, to commit and do, to the great displeasure of Almighty God, contrary to the act of assembly in such case made and provided, and against the peace, government, and dignity of the state. The *second* count stated, that the said *Davis,* not having the fear of God, &c. but being moved, &c. on, &c. with force and arms, &c. in and upon the said W C, in the peace of God, &c. then and there being, did make an assault, and him the said W C then and there did beat, &c. with an intent then and there feloniously, &c. with him the said W C, against the order of nature, to have a venereal affair, and with him the said W C, that sodomitical, detestable, and abominable sin, (among christians not to be named,) called *Buggery,* then and there feloniously, &c. and against the order of nature, to perpetrate and commit, to the great displeasure of Almighty God, and disgrace of all human kind, contrary to the act of assembly in such case made and provided, and against the peace, government, and dignity of the state. The traverser having appeared, filed a suggestion, on oath, that he could not have a fair and impartial trial in the court of oyer and terminer, &c. and prayed the court to order and direct the record of the proceedings to be transmitted to the judges of an adjoining county court, there to be tried, &c. This prayer the court refused. The traverser having pleaded not guilty, the case was tried, and a verdict of guilty was found against him. His counsel moved the court in

arrest of judgment, for the following reasons: 1. That the indictment concludes against the act of assembly, which makes the facts charged in the indictment criminal, or which forbids it. 2. That the facts charged in the indictment, as there charged, is no offence indictable by the laws of this state. 3. That the indictment is insufficient, inasmuch as it does not charge the traverser with an intent to have carnal knowledge of the body of W C. 4. That the indictment is insufficient wholly to authorise the court to pass judgment on against the party. The court, (*Scott*, Ch. J.) overruled the motion, and rendered judgment on the verdict, that the traverser should be imprisoned in the gaol of *Baltimore* county, from the 9th of January 1811, until the 9th of April 1811, and that he stand in the pillory on the third Saturday of January, being the 19th day of the said month, in the year 1811, for the space of fifteen minutes, between the hours of 12 and 1 o'clock of the same day, and that he also pay to the state the sum of $500, for his fine laid upon him for the offence aforesaid, according to the act of assembly in such case made and provided, and that he be committed to prison until he pays the said fine, &c. To reverse that judgment the traverser brought the present writ of error.

The cause was argued in this court before CHASE, Ch. J. POLK, BUCHANAN, NICHOLSON, and EARLE, J.

*Winder* and *Brice*, for the Plaintiff in error, contended, 1. That the cause should have been removed to an adjoining county court on the motion, &c. of the traverser. They referred to the acts of 1799, *ch.* 58, *s.* 1; 1804, *ch.* 55, *s.* 3; and 1805, *ch.* 65, *s.* 49, *s.* 25.

2. That the indictment was founded on the act of 1793, *ch.* 57, when no such crime as that charged in the indictment, is prohibited by that act. They referred to *Stubb's Cr. C. C.* 108, 109, 110. 2 *Hawk.* 35, 45. 76; and *Hale,* 170, 171.

3. That admitting it to be an offence, it was not sufficiently set out in the indictment. 1 *East's C. L.* 480. *Stubb's Cr. C. C.* 202, 203. 12 *Coke,* 36, 37; *and* 1 *Hale,* 628.

5. That the judgment was entered as an offence against the act of assembly.

*Johnson*, (Attorney General,) for the state, contended, that it was discretionary with the court, under the acts of assembly, to remove the cause or not; and having decided that the cause should not be removed, no appeal lies there-from. He referred to the act of 1805, *ch.* 65, *s.* 49. Upon the other questions he referred to the act of 1793, *ch.* 57, *s.* 10. *Stubb's Cr. C. C.* 140; and *East's C. L.* 448.

EARLE, J. delivered the opinion of the court. The court are of opinion, that an assault, with an intent to commit the crime charged in this case, is within the act of 1793, *ch* 57, and is thereby punishable. The objections made to the indictment do not appear to the court to have any solidity in them. As the judgment of the court may be either at common law, or under the act of assembly, the conclusion *contra formam statuti*, is not improper; and the crime intended to be committed, being only in aggravation of the assault, it is sufficiently set forth in the manner it is stated.

The criminal court of *Baltimore* county have an undoubted power, we conceive, to order the record of proceedings on an indictment to be transmitted to the adjoining county court, the party charged having previously complied with the directions of the act of 1805, *ch.* 65, *s.* 49. The criminal court of *Baltimore* county, although denominated the Court of Oyer and Terminer and Gaol Delivery, must be considered as a branch of *Baltimore* county court, exercising criminal jurisdiction only, which is vested in all the other county courts in the state. Unless it is so considered, this consequence will be the necessary result, that the citizens of *Baltimore* county will be deprived of a privilege which is enjoyed by the citizens of all the other counties—the privilege of removing the indictment into an adjoining county, when a fair and impartial trial cannot be had in the county in which the person is indicted. The power is to be exercised in the discretion of the court, according to all the circumstances attending the prosecution, and it being impossible they should appear in the record, neither party can appeal, we think, from the decision of such a question.

The unmeaning expressions that follow the judgment of the court below, are to be rejected as surplusage.

POLK, J. dissented.

NICHOLSON, J. I am of opinion, that an assault, with intent to commit sodomy, is punishable by the act of 1793, *ch.* 57. The punctuation of the *tenth* section might perhaps warrant a different construction, by separating the words "or sodomy," from "assault, with intent to commit murder, robbery or rape." Such a construction would confine the punishment to the actual perpetration of sodomy, which clearly was not the intention of the legislature. All the higher offences, such as murder, robbery, rape, burglary, arson, sodomy, and the like, are included in the general antecedent expressions, "felony with or without benefit of the clergy," and the legislature could not mean to descend to a particular designation of a single offence, which had been before made punishable by the general clause. The crime of sodomy is too well known to be misunderstood, and too disgusting to be defined, farther than by merely naming it. I think it unnecessary therefore, to lay the *carnaliter cognovit* in the indictment, particularly as *Stubbs*, a compiler of some repute, gives a form of indictment without these words, and *East*, another author of merited celebrity, does not consider them essential.

The criminal court of *Baltimore* has not, in my judgment, any authority to transmit indictments to an adjoining county court for trial. The act of 1804, *ch.* 55, *s.* 3, does not give the authority, for it speaks only of transmitting proceedings from one *county court* to another *county court*, and manifestly relates only to those courts which had been created by the preceding section. The criminal court of *Baltimore* is not a county court, but a court of limited jurisdiction, established by the act of 1793, *ch.* 57, for especial purposes, and expressly named and styled "*The Court of Oyer and Terminer and Gaol Delivery.*" The county courts are created by the constitution as changed in 1804 and 1805, which declares that they shall be composed of a chief judge, and two associate judges, to be thereafter commissioned by the governor and council, and it has never heretofore been supposed that the criminal court of *Baltimore* was one of these. The *forty-ninth* section of the act of 1805, *ch.* 65, is merely restrictive; it confers no new authority upon any court, but was intended barely to prohibit the removal before the indictment is found.

Although I differ with the other members of the court in some of their reasoning, I nevertheless concur with them in affirming the judgment.

JUDGMENT AFFIRMED.