# FLETCHER *v.* STATE OF MARYLAND

[No. 124, September Term, 1969.]

*Decided January 6, 1970.*

*Motion for rehearing filed February 4, 1970; denied February 11, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, SMITH and DIGGES, JJ.

*Earl E. Manges,* with whom was *Edward J. Ryan* on the brief, for appellant.

*Robert A. DiCicco, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Donald W. Mason, State's Attorney for Allegany County,* and *Paul J. Stakem, Deputy State's Attorney for Allegany County,* for appellee.

BARNES, J., delivered the opinion of the Court.

The Circuit Court for Allegany County (Getty, J.) found the appellant, Carlson Lee Fletcher, defendant below, guilty of contributing to the delinquency of a minor, David Randy Goodfellow (Randy), aged 12, and sentenced him to the custody of the Commissioner of Correction for a period of two years. On appeal, Fletcher presents three questions:

1. Did the State, the appellee, prove the defendant's guilt beyond a reasonable doubt?
2. Did the State prove beyond a reasonable doubt that any of the acts complained of occurred within one year of the date of the issuance of the warrant on April 29, 1969?
3. Did the State prove that Randy was a delinquent minor?

### 1.

The hearing in the case in the lower court took place on May 5, 1969. Randy testified that he had met Fletcher (aged 39) approximately two summers ago, in the summer of 1967. He stated that Fletcher had invited him to come to Fletcher's trailer and "play with him." The nature of the "play" consisted of Fletcher taking Randy's penis and playing with it during which Fletcher would put it in his mouth. This type of play, according to Randy, took place approximately 50 times, usually in Fletcher's trailer. The last time it took place was "last summer" (1968) in approximately June or July.

On cross-examination there was some confusion about the last time Fletcher committed any sexual act with Randy. The cross-examination and redirect examination were as follows:

"Q. Anyhow, the last time you were at Mr. Fletcher's trailer was around Halloween of 1967 wasn't it? A. Yes.

"Q. And weren't you forbidden by your parents to go up to Mr. Fletcher's anymore? A. Yes.

"Q. And you haven't been in Mr. Fletcher's company since then, have you? A. No.

"Q. Well, you said that was the last time, I assume you're right. Now then, you were also forbidden to go to your grandmother's house weren't you? A.————

"Q. I think that's all son.

"(Mr. Stakem) Just a couple of more questions.

"Q. Did you say that the last time you were—

"Objection by Mr. Ryan: I object, I object. We have cross examined.

"(The Court) Well, he has testified to two different dates.

"(Mr. Ryan) ————— He has just testified that it was Halloween, 1967.

"(The Court) Was it 1967 or 1968? A. 1968.

"Q. Why did you tell me it was 1967, son? You told me a minute ago, it was 1967. You don't know when it was do you? A. It was Halloween, 1967. Last year.

"Q. No, no, it was 1967 Halloween when you were at Mr. Fletcher's trailer. A. Well, I didn't mean that.

"Q. That's all.

"(Mr. Stakem) No further questions. That's the state's case, your Honor."

Randy further testified that the "play" occurred with regularity each time he went to Fletcher's trailer, which was about once a day. During these visits to the trailer, Fletcher would also ask Randy to put Fletcher's penis in Randy's mouth and required the boy to take pictures of Fletcher naked. Fletcher made Randy promise that he would not tell anybody of these acts. Randy kept the promise until March 1969 when he told his grandfather, Russell Goodfellow, who had already become suspicious because Fletcher had given Randy some expensive presents. Randy stated that Fletcher had given him money when he went to the races and at Christmas time had given him $18.00. Fletcher also gave him a pair of walkie-talkies and some money for a jacket.

Randy's grandfather, Russell Goodfellow, testified that he had known Fletcher for approximately a year and eight months—since August of 1967. During that time Fletcher and Randy were "running around a lot together." He testified that Fletcher had given Randy a wrist watch and an expensive set of walkie-talkies. He stated that on one occasion, "some seven or eight months

ago," Fletcher took Randy into the bedroom with him, locked the door and would not let the girls in.

Fletcher testified that he knew Randy and felt that he was neglected by his family. For this reason, he gave Randy a walkie-talkie for Christmas and each of his little sisters a watch and a baby doll. He stated that he had known Randy since the end of 1967 but denied ever indulging in any sexual play with the boy. Fletcher disputed that he had any meeting with Randy in June 1968 and stated that the last time he saw Randy was in 1967, around Halloween time. Fletcher denied ever taking pictures of the boy while nude or having Randy take pictures of Fletcher while nude.

In our opinion, there was sufficient evidence with reasonable inferences from the evidence, from which the trial judge could conclude that Fletcher was guilty of violating Code (1957) Art. 26, § 55. This statute provides for the punishment of a person 18 years of age or older over whom the judge may have jurisdiction under § 53, if found guilty of any act or omission as therein defined, by a fine not exceeding $500 or imprisonment not exceeding two years, or both. There are provisions for an election of a jury trial or of trial before a criminal court, neither of which are applicable here as Fletcher made no such elections. Art. 26, § 53 provides, *inter alia,* that the court has original jurisdiction, unless there is a waiver as therein provided and subject to the right of trial by jury, to try — any parent, guardian or any other person 18 years of age or over "for any wilful act or omission bringing a child within the jurisdiction of the court * * *." Art. 26, § 52 (e) defines a "delinquent child" as follows:

> "(e) 'Delinquent child' means a child (1) who violates any law or ordinance, or who commits any act which, if committed by an adult, would be a crime not punishable by death or life imprisonment; (2) who is incorrigible or ungovernable or habitually disobedient or who is be-

yond the control of his parents, guardian, custodian or other lawful authority; (3) who is habitually a truant; (4) who without just cause and without the consent of his parents, guardian or other custodian, repeatedly deserts his home or place of abode; (5) who is engaged in any occupation which is in violation of law, or who associates with immoral or vicious persons; or (6) who so deports himself as to injure or endanger the morals of himself or others."

These statutory provisions were in force when the acts took place and the case tried.

In *Vincent v. State*, 220 Md. 232, 237, 151 A. 2d 898, 901 (1959), Judge (later Chief Judge) Prescott, for the Court gave the test for sufficiency of the evidence in a criminal case as follows:

"In every criminal case, evidence, to meet the test of legal sufficiency, must show directly, or support a rational inference of, the facts required to be proved; and the facts must be established, or the inference supported, beyond a reasonable doubt or to a moral certainty, or a reasonable doubt of an opposite fact must be created."

When a case is tried by the court without a jury, as was the present case, we may review the case upon both the law and the evidence, but we will not reverse the lower court's findings of fact unless clearly erroneous, giving due regard to the opportunity of the trial court to judge the credibility of the witnesses. Maryland Rule 886 a. We do not determine on appeal whether or not the appellant was guilty beyond a reasonable doubt, but whether or not there was any evidence present or rational inferences to be drawn from the evidence from which the trial court could find the appellant guilty beyond a reasonable doubt. If there was such evidence and

reasonable inferences, we will not find that the trial court's decision was erroneous. *Abney v. State,* 244 Md. 444, 447, 223 A. 2d 792, 794-95 (1966), *cert. denied,* 387 U. S. 925, 87 S. Ct. 2043, 18 L.Ed.2d 981. Inasmuch as the credibility of the witnesses is a matter for the trier of facts to determine, the trial court may disbelieve any exculpatory statements by the accused. *Bird v. State,* 231 Md. 432, 436, 190 A. 2d 804, 806 (1963).

In the present case there was a clear conflict in the testimony. The trial court chose to believe the testimony of Randy and his grandfather and to reject the exculpatory statements of Fletcher. It cannot be said that this determination was erroneous. There was ample evidence from the rather graphic description by Randy of acts of unnatural and perverted sexual practice by Fletcher, occurring approximately 50 times, with the supporting evidence of the grandfather and the admitted gifts to support the trial court's determination of guilt.

2.

Code (1968 Replacement Volume), Art. 57, § 11 provides that "No prosecution shall be commenced for any fine, penalty or forfeiture, or any misdemeanor, except those punished by confinement in the penitentiary, unless within one year from the time of the offense committed." This statutory provision is, in our opinion, applicable to the charge involved in the present case so that the State must prove that one or more of the unnatural and perverted acts occurred within one year prior to April 29, 1969. As we have already pointed out there was some conflict in the testimony in regard to when the last act occurred, but, in our opinion, the trial court carefully considered the evidence and concluded that some of the acts occurred in June or July, 1968. On this issue the record indicates the following:

"(The Court) Now the boy has testified, as I recalled his testimony that he doesn't remember what happened or he doesn't know whether the

last time he was with him was as far as he
knows as I understood his testimony was June
or July of 1968. Is that correct?

"(Mr. Stakem) [Attorney for the State] He
later said the last time he was at Mr. Fletcher's
trailer was Halloween of 1968. But he did say
June or July, 1968 as far as these occurrences. ·

"(The Court) The last time anything took place
was June or July, 1968, is that his testimony?

"(Mr. Stakem) That's as I recall it.

"(The Court) Do you recall it Mr. Ryan?

"(Mr. Ryan) [Attorney for Fletcher] That's
what I'd say. That's what the boy said."

In our opinion, we should not find that the trial court
was clearly in error in concluding that the prosecution
was not barred by the statute of limitations.

### 3.

Fletcher finally contends that the State did not prove
that Randy was a delinquent minor. As already set forth,
Art. 26, § 53 subjects Fletcher to the jurisdiction of the
Juvenile Court in the event he commits "any wilful act
or omission bringing a child within the jurisdiction of
the [Juvenile] court." Assuming, *arguendo*, but without
deciding, that under this statutory provision the State
must prove that Randy was a delinquent child, the State,
in our opinion, has proved that Fletcher committed a wil-
ful act or omission causing Randy to be brought within
the jurisdiction of the Juvenile Court. It is clear to us
that the testimony supports a finding that Fletcher did
commit such wilful acts and omissions by committing
perverted sexual acts with Randy in violation of Code
(1967 Replacement Volume), Art. 27, § 554 which makes
it a misdemeanor punishable by a fine of $1,000 with im-
prisonment in jail, the house of correction or the peni-
tentiary for 10 years, or both in the discretion of the
court for a person "convicted of taking into his or her
mouth the sexual organ of any other person or animal,

or who shall be convicted of placing his or her sexual organ in the mouth of any other person or animal, or who shall be convicted of committing any other unnatural or perverted sexual practice with any other person or animal * * *."

As we have seen, the definition of a delinquent child in Art. 26, § 52 (e) means a child "(1) who violates any law or ordinance, or who commits any act which, if committed by an adult, would be a crime not punishable by death or life imprisonment;" * * * "(5) * * * who associates with immoral or vicious persons * * *." Randy was enticed by Fletcher into committing an unnatural or perverted act in violation of Art. 27, § 554 and Fletcher by committing these acts upon Randy was clearly "an immoral or vicious person" with whom Randy "associated." In the present case, the approximately 50 unnatural or perverted acts clearly made Randy a delinquent child; and these wilful acts committed by Fletcher caused Randy to be brought within the jurisdiction of the Juvenile Court.

It should be observed that Art. 26, § 53 was repealed by the Acts of 1969, Ch. 432, § 2 and that under Art. 26, § 70-2 (7), added by the Acts of 1969, Ch. 432, § 2, the Juvenile Court has exclusive original jurisdiction to "try any person who has reached his eighteenth birthday (or, in Baltimore City, until July 1, 1970, to try any person who has reached his sixteenth birthday) for any wilful act or omission causing a child *to be adjudicated* neglected, delinquent, or in need of supervision." (Emphasis supplied.) The addition of the words "to be adjudicated" in the new statute, effective generally on July 1, 1969, except in Baltimore City where it became effective on June 1, 1969, and with a special provision for an effective date in Montgomery County, rather indicates that prior to the effective date of the new statute there was no requirement that the child *should be adjudicated* neglected, delinquent, or in need of supervision. If the existing law were thought to require such an adjudica-

tion, it would most likely not have been thought by the General Assembly to have been necessary to have added those specific words in the new legislation.

*Judgment affirmed, the costs to be paid by the appellant.*