580 A.2d 176

**Steven Adam SCHOCHET**

v.

**STATE of Maryland.**

**No. 76, Sept. Term, 1988.**

Court of Appeals of Maryland.

Oct. 9, 1990.

Joseph P. Suntum (Miller, Miller & Canby, Chartered, both on brief), Rockville, for petitioner.

Stephen J. Shapiro, Gerard J. Gaeng, Debra A. Jung, Whiteford, Taylor & Preston, Baltimore, amicus curiae, for American Civil Liberties Union of Maryland, Inc.

David W. Ogden, Thomas N. Griffin, III, Donald B. Verrilli, Jr., Harry H. Rieck, Jenner & Block, Washington, D.C., amicus curiae, for Maryland Psychological Ass'n, Institute for Advanced Study of Human Sexuality, American College of Sexologists, Society for the Scientific Study Of Sex, And Population Planning Associates.

Gary E. Bair, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

Reargued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS * and CHASANOW, JJ.

ELDRIDGE, Judge.

Two major issues are presented in this case. First, does Maryland Code (1957, 1987 Repl.Vol.), Art. 27, § 554, providing criminal penalties for "unnatural or perverted sexual practices," encompass consensual, noncommercial, heterosexual activity ·between adults in the privacy of the home? Second, if Art. 27, § 554, criminalizes such activity, does it violate either the Constitution of the United States or the Maryland Declaration of Rights? As we shall answer the first question in the negative, we do not reach the second question.

I.

An eight-count indictment was filed in the Circuit Court for Montgomery County, charging the petitioner, Steven Adam Schochet, with various sexual offenses. All of the charged offenses were committed upon the same alleged victim during one night in October 1986.

Counts one and four of the indictment charged Schochet with rape in the first degree and rape in the second degree, in violation of Maryland Code (1957, 1987 Repl.Vol.), Art. 27, §§ 462 and 463, based upon his engaging in vaginal intercourse with the complaining witness, Dovie Sullivan, allegedly by force or threat of force, against the will and without the consent of the complaining witness. Counts two, three, five, and six of the indictment charged Schochet with first and second degree sexual offenses, in violation of Art. 27, §§ 464 and 464A, based upon his allegedly engaging in anal intercourse and fellatio with Ms. Sullivan, all by

---

* Adkins, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Art. IV, § 3A, he also participated in the decision and the adoption of the opinion.

force or threat of force, against the will and without the consent of the complaining witness.

Count seven charged Schochet with sodomy, in violation of Art. 27, § 553,[1] based upon his allegedly having anal intercourse with Ms. Sullivan. Count eight, which is the only count on which Schochet was convicted, charged him with committing "a certain unnatural and perverted sexual practice with" Ms. Sullivan, namely fellatio, in violation of Art. 27, § 554.[2] Schochet filed a pretrial motion to dismiss counts seven and eight on the ground that they were constitutionally infirm, but the circuit court denied the motion.

At Schochet's trial two entirely different versions of the incident giving rise to the charges were presented to the

---

1. As to the nature and scope of the offense of sodomy under Art. 27, § 553, *see, e.g., Daniels v. State,* 237 Md. 71, 72, 205 A.2d 295 (1964); *Bradbury v. State,* 233 Md. 421, 423, 197 A.2d 126 (1964); *Canter v. State,* 224 Md. 483, 485, 168 A.2d 384 (1961); *Davis v. State,* 3 H. & J. 154, 157 (1810) ("The crime of sodomy is too well known to be misunderstood, and too disgusting to be defined, farther than by merely naming it") (per Nicholson, J.). *See also* R. Perkins & R. Boyce, *Criminal Law* 465–469 (3d ed. 1982).

2. Art. 27, § 554, provides as follows:
   **"§ 554. Unnatural or perverted sexual practices.**
   "Every person who is convicted of taking into his or her mouth the sexual organ of any other person or animal, or who shall be convicted of placing his or her sexual organ in the mouth of any other person or animal, or who shall be convicted of committing any other unnatural or perverted sexual practice with any other person or animal shall be fined not more than one thousand dollars ($1,000.00), or be imprisoned in jail or in the house of correction or in the penitentiary for a period not exceeding ten years, or shall be both fined and imprisoned within the limits above prescribed in the discretion of the court.
   "And in any indictment for the commission of any of the acts, hereby declared to be offenses, it shall not be necessary to set forth the particular unnatural or perverted sexual practice with the commission of which the defendant may be charged, nor to set forth the particular manner in which said unnatural or perverted sexual practice was committed, but it shall be sufficient if the indictment set forth that the defendant committed a certain unnatural and perverted sexual practice with a person or animal, as the case may be."

jury, one by the complaining witness and one by Schochet. The verdicts indicated that the jury credited Schochet's version and not that of Ms. Sullivan. Nevertheless, we shall set forth both versions.

Dovie Sullivan testified that on the evening of October 3, 1986, she was at home with her 11–year–old daughter. The daughter went to bed about 10:30 p.m., and Ms. Sullivan stayed up, drinking and listening to music in celebration of her divorce. Ms. Sullivan heard a knock at her door at approximately 12:30 a.m. When she answered the door, she found the defendant, Steven Schochet, whom she did not know, standing outside. He said that he was looking for a friend named Denise, and he asked to use the telephone to call the apartment next to Sullivan's. Ms. Sullivan let him in the apartment to use the telephone.

When Schochet was inside the apartment he began to admire the stereo system and continued to make conversation about it. Ms. Sullivan tried to direct his attention to the telephone, but he ignored her, went into the kitchen, and asked her to fix him a drink and something to eat. When she told him to leave, he looked at her very strangely, and she became frightened. He continued to make himself at home and acted as if he belonged in her apartment. He wandered throughout the apartment while Ms. Sullivan followed asking him to leave. She testified that she did not scream or try to get help because her daughter was asleep, and she feared for her daughter's safety as well as her own.

Ms. Sullivan went on to testify that Schochet eventually made his way to her bedroom where he forced her to perform fellatio and have vaginal sexual intercourse. She stated that, although he had no weapon and made no overt threats, she was afraid of him. Next, Schochet fixed himself something to eat, then took her back to her bedroom, and again forced her to perform fellatio and have vaginal and anal intercourse. Afterwards, he told her that he needed some rest and went to sleep on the bedroom floor.

According to Dovie Sullivan, the next morning she got up to send her daughter off to school and told Schochet to remain in the bedroom so that her daughter would not see him. Sullivan stated that she locked the bedroom door behind her. After her daughter left for school, she ordered Schochet to leave. Sullivan stated that he made her follow him to his car so that she would not call the police. When Schochet drove off, she went back to her apartment and went to sleep for a few hours. After she awoke and was getting ready to leave for work, she heard a knock at the door. She looked through the peephole on the door and saw that it was Schochet. He accused her of giving him "crabs" and demanded that she give him some money so that he could go to a doctor. She refused to open the door, and Schochet left. She then went to work for a few hours, and, when she returned home, she saw Schochet's car in the parking lot. Ms. Sullivan went into her apartment, and within five minutes there were four policemen at the door. They questioned her about a report which they had received concerning an abused child. The police officers noticed that she was upset and left a number where she could contact someone if she wanted to talk. Sullivan was later visited by a female detective, and she gave the detective a statement concerning the events of the previous night which led to the charges against Schochet.

Steven Schochet testified to the following version of events. On the night of October 3, 1986, Schochet was attending a fraternity party in College Park, Maryland. He left the party to visit a friend named Denise. He had visited this friend frequently at her apartment. When he arrived at his friend's apartment, he was told that she was at a party in another building. Schochet went to the other building where he heard loud music coming from one of the apartments. Assuming that he had found the party, he knocked on the door, and Dovie Sullivan answered. Schochet asked for Denise, and Sullivan told him that she could not hear him because her music was too loud. She invited him in, turned down the music and asked him what he

wanted. He told her, and she said she did not know a Denise. When he started to leave, she told Schochet to relax and have a drink. She fixed him a coke, and they began to talk. She began to kiss him, then unzipped his pants and performed fellatio on him. She invited him to her bedroom, and there they had consensual sexual intercourse. Schochet testified that at no time did he have or attempt to have anal intercourse with her.

The next morning, Schochet remained in Sullivan's bedroom at her request while she sent her daughter off to school. He went back to sleep, and later he left when she asked him to. He went home and there discovered that he had contracted "crabs." Schochet went back to Sullivan's apartment to ask if she would take him to a doctor and pay for the examination and treatment. She would not give him the money or take him to the doctor. Schochet testified that he felt used and angry; in retaliation he called the police and falsely reported that Sullivan was abusing her daughter.

Following the presentation of evidence and the denial of Schochet's motion for judgment of acquittal, the defense requested the court to instruct the jury that, under the circumstances of the case, consent was a defense to the seventh and eighth counts charging sodomy and fellatio. Defense counsel argued that the criminal statutes did not apply to consensual conduct "between two heterosexual adults, in the privacy of one of their homes." The court denied the request. The court also denied defense counsel's request to argue to the jury that consent was a defense to the charges in counts seven and eight.

In the court's instructions with regard to counts one through six, the court informed the jury concerning the need for the prosecution to prove lack of consent and force or threat of force. For example, with regard to count six, charging second degree sexual offense based on fellatio, the court instructed the jury in part as follows:

"In order to convict the Defendant of second degree sexual offense the State must prove:

"One: That the Defendant committed fellatio ... with Ms. Sullivan.

"Two: That the act was committed by force or threat of force.

"Three: That the act was committed without the consent of Ms. Sullivan."

After defining "fellatio," the court went on:

"The amount of force necessary depends upon the circumstances. No particular amount of force is required, but it must be sufficient to overcome the resistance of the victim.

"You must be satisfied that the victim either resisted, and the resistance was overcome by force, or threat of force, or that the victim was prevented from resisting by force or threat of force.

"The victim must have resisted to the extent of her ability at the time, unless her resistance, or will to resist was overcome by force, or fear that was reasonable under the circumstances.

"Finally, consent means agreeing to the sexual act, rather than submitting as a result of force, or threat of force."

With regard to count eight, however, the court instructed the jury that all that the State had to prove was "that the defendant placed his penis in the mouth of Ms. Sullivan, which is the act of fellatio."[3]

---

**3.** The State's Attorney's jury argument regarding count eight also emphasized that consent was not a defense. He stated:

"The last two counts have to do with the sodomy and fellatio, crimes that the Defendant has been charged with. I will start with those, because those are pretty much the easiest.

"The law of Maryland, as the Judge has instructed you, is basically that consent is not a defense to those particular crimes.

"In this case it is pretty easy as far as the fellatio part of it is concerned, because the Defendant, by his own admission, committed that—engaged in that act, with Ms. Sullivan. So you all shouldn't have any problem with the first offense, as it applies in this case."

After deliberations, the jury returned verdicts of not guilty as to counts one through seven, including the count of sodomy. A verdict of guilty was returned as to count eight, the charge of unnatural and perverted sexual practice, *i.e.*, fellatio. Schochet received a sentence of five years with all but eighteen months suspended and was to be placed on five years of supervised probation upon his release. Upon Schochet's motion to reconsider the sentence, the court resentenced him to five years incarceration, all of which was suspended, and placed him on five years of supervised probation.

Schochet appealed to the Court of Special Appeals, arguing primarily that Art. 27, § 554, "is unconstitutional as applied to private and noncommercial sexual acts between consenting heterosexual adults." Schochet also claimed that his sentence was based on impermissible considerations and that it violated the Eighth Amendment to the United States Constitution.

A divided Court of Special Appeals affirmed. *Schochet v. State*, 75 Md.App. 314, 541 A.2d 183 (1988). In rejecting the argument that Schochet's conviction violated a federal constitutional right of privacy, the majority opinion in the Court of Special Appeals, after reviewing numerous Supreme Court cases,[4] concluded that there was no "constitutional protection for sexual activity—orthodox or unorthodox, heterosexual or homosexual—at least outside of marriage." 75 Md.App. at 339, 541 A.2d at 195. The court also rejected Schochet's arguments that the circuit court considered impermissible matters at sentencing and that the five year suspended sentence violated the Eighth Amend-

---

**4.** The Court of Special Appeals discussed, *inter alia, Bowers v. Hardwick,* 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986); *Carey v. Population Services Int'l,* 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977); *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).

ment. Judge Wilner dissented, maintaining that the conduct which was punished in this case is constitutionally protected by the Fourteenth Amendment and Article 24 of the Maryland Declaration of Rights. 75 Md.App. at 362–363, 541 A.2d at 206–207. Judge Wilner took the position

"(1) that there *is* a Constitutionally protected zone of privacy, ill-defined perhaps but nonetheless existing, that shields certain fundamental personal conduct and expression from substantial governmental interference; (2) that the conduct at issue here, when engaged in under the circumstances noted, falls within that zone of privacy; (3) that, although inclusion within this zone does not necessarily endow an activity with total immunity from governmental interference, it does require that the government show a strong and compelling justification for the interference; and (4) that no such showing ha[d] been made here."

*Schochet v. State, supra,* 75 Md.App. at 357, 541 A.2d at 204.

■ Schochet filed a petition for a writ of certiorari, raising the question of whether, under the United States Constitution and the Maryland Declaration of Rights, Art. 27, § 554, is valid "as applied to the noncommercial, consensual, sexual intimacies between heterosexual adults in private." Schochet also raised the same two sentencing issues which had been raised in the Court of Special Appeals. The State filed a cross-petition for a writ of certiorari, arguing that the question of § 554's constitutionality, as applied to consensual, noncommercial, heterosexual conduct in private, was not really presented because the jury's verdicts did not necessarily mean that the fellatio was consensual and because the State had introduced sufficient evidence of force. This Court granted Schochet's petition and denied the State's cross-petition. In light of the charges, the evidence, the jury instructions, the arguments before the jury, and the jury's verdicts (particularly the acquittal on count six), we agree with the Court of Special Appeals that the constitutional issue raised by Schochet was presented. The jury

obviously concluded that the State had failed to prove that the sexual activity was nonconsensual.

The case was initially briefed and argued before us on the three issues presented in Schochet's certiorari petition. After the first oral argument, the Court sua sponte added a new issue and ordered reargument. The additional issue was as follows:

"As a matter of statutory construction, and considering the principle that if reasonably possible courts will construe a statute so as to avoid a serious constitutional question, does Maryland Code (1957, 1987 Repl. Vol.), Art. 27, § 554, encompass consensual, noncommercial, heterosexual activity between adults in the privacy of the home?"

As previously indicated, we answer this question in the negative and, therefore, do not decide the other issues raised.

## II.

This Court has emphasized that " 'if a legislative act is susceptible of two reasonable interpretations, one of which would not involve a decision as to the constitutionality of the act while the other would, the construction which avoids the determination of constitutionality is to be preferred.' " *Heileman Brewing v. Stroh Brewery*, 308 Md. 746, 763–764, 521 A.2d 1225 (1987), quoting *Maryland State Board of Barber Examiners v. Kuhn*, 270 Md. 496, 505, 312 A.2d 216, 221 (1973). "Stated differently, 'a construction of a statute, giving rise to doubts as to its constitutionality, should be avoided if the language permits.' " *Ibid.*, quoting *Baltimore County v. Missouri Realty*, 219 Md. 155, 159, 148 A.2d 424, 427 (1959). *See Board of Trustees v. City of Baltimore*, 317 Md. 72, 97, 562 A.2d 720 (1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1167, 107 L.Ed.2d 1069 (1990); *Yangming Transport v. Revon Products*, 311 Md. 496, 509–510, 536 A.2d 633 (1988), and cases there cited.

In the instant case, the constitutional issue which divided the Court of Special Appeals is sufficiently substantial for

the above-quoted principle to be applicable. The State does not contend otherwise. As shown by the excellent and extensive majority and dissenting opinions below, very strong arguments, based on Supreme Court decisions and language in Supreme Court opinions, can be made on both sides of the constitutional right to privacy issue presented here.

Moreover, among the courts addressing the constitutionality of punishing consensual, heterosexual acts between consenting adults in private, there is a significant division throughout the country. For example, in *State v. Pilcher*, 242 N.W.2d 348, 359 (Iowa 1976), the Supreme Court of Iowa held that a statute similar to Art. 27, § 554, was

"unconstitutional as an invasion of fundamental rights, such as the personal right of privacy, to the extent it attempts to regulate through use of criminal penalty consensual [oral sex] practices performed in private by adult persons of the opposite sex."

The Court of Appeals of New York, in *People v. Onofre*, 51 N.Y.2d 476, 488, 434 N.Y.S.2d 947, 951, 415 N.E.2d 936, 940–941 (1980), *cert. denied*, 451 U.S. 987, 101 S.Ct. 2323, 68 L.Ed.2d 845 (1981), held that a New York statute violated the federal constitutional right of privacy when applied to persons deciding to engage in " 'deviant' [sexual] conduct, so long as the decisions are voluntarily made by adults in a noncommercial, private setting." The New York court also held that the statute, by proscribing certain sexual conduct by persons not married to each other, but not prohibiting the same conduct by persons married to each other, violated the right to equal protection of the laws. 51 N.Y.2d at 492, 434 N.Y.S.2d at 953, 415 N.E.2d at 942–943. *See, e.g., Post v. State*, 715 P.2d 1105, 1107, 1109 (Okl.Crim.App.), *cert. denied*, 479 U.S. 890, 107 S.Ct. 290, 93 L.Ed.2d 264 (1986) (holding that a statute violated the federal constitutional right of privacy when applied to heterosexual "non-violent consensual activity between adults in private," and pointing out "that twenty-two states have decriminalized private consensual sodomy between adults"); *Commonwealth v.*

*Bonadio,* 490 Pa. 91, 415 A.2d 47 (1980). *See also Cotner v. Henry,* 394 F.2d 873, 875 (7th Cir.), *cert. denied,* 393 U.S. 847, 89 S.Ct. 132, 21 L.Ed.2d 118 (1968); *Buchanan v. Batchelor,* 308 F.Supp. 729 (N.D.Tex.), *vacated on other grounds,* 401 U.S. 989, 91 S.Ct. 1222, 28 L.Ed.2d 526 (1970); *State v. Saunders,* 75 N.J. 200, 381 A.2d 333, 340 (1977).

On the other hand, some courts have reached the opposite conclusion. In *State v. Santos,* 122 R.I. 799, 818, 413 A.2d 58, 68 (1980), a case where the jury apparently found that heterosexual conduct between adults in private was consensual, the Supreme Court of Rhode Island held "that the [federal constitutional] right of privacy is inapplicable to private unnatural copulation between unmarried adults."

*State v. Poe,* 40 N.C.App. 385, 252 S.E.2d 843, *cert. denied,* 298 N.C. 303, 259 S.E.2d 304 (1979), *appeal dismissed,* 445 U.S. 947, 100 S.Ct. 1593, 63 L.Ed.2d 782 (1980), involved the situation where a man and a woman, both adults and not married to each other, engaged in consensual fellatio in private. In upholding the criminal conviction of the man, the North Carolina court stated (40 N.C.App. at 388–389, 252 S.E.2d at 845):

"Conceding for purposes of argument that a husband or wife could not be prosecuted for engaging in fellatio in private with his or her spouse, we do not believe it creates an unreasonable class to treat unmarried persons differently. The state can forbid certain types of sexual conduct. The statute under which the defendant was prosecuted forbids homosexual as well as heterosexual unnatural sex acts. İt has been upheld as to homosexual acts.... In this state, fornication and adultery have been proscribed since at least 1805, G.S. 14–184. We believe the state, consistent with the Fourteenth Amendment, can classify unmarried persons so as to prohibit fellatio between males and females without forbidding the same acts between married couples. We hold that the constitutional right of privacy does not protect the defendant in this case."

In *Dixon v. State,* 256 Ind. 266, 270–271, 268 N.E.2d 84, 86 (1971), an adult male was convicted for an act of cunnilingus performed upon an adult female at the latter's home. The court, assuming "for the sake of argument that the prosecuting witness did consent," held that the conviction did not violate the defendant's federal constitutional right of privacy. *See State v. Elliott,* 89 N.M. 305, 551 P.2d 1352 (1976). *See also State v. Bateman,* 113 Ariz. 107, 110–111, 547 P.2d 6, 9, 10, *cert. denied,* 429 U.S. 864, 97 S.Ct. 170, 50 L.Ed.2d 143 (1976) (two cases, one involving "lewd and lascivious acts" between persons married to each other and the other involving the same type of acts between unmarried individuals; the court construed the Arizona statute as limited to "nonconsensual sexual conduct" with respect to the married couple, but encompassing "sexual activity between two consenting adults in private" with respect to the acts of the unmarried couple; the court upheld the statute as construed). *Cf. Lovisi v. Slayton,* 539 F.2d 349, 351, 352 (4th Cir.), *cert. denied,* 429 U.S. 977, 97 S.Ct. 485, 50 L.Ed.2d 585 (1976).

We express neither agreement nor disagreement with any of the above-cited cases. We simply point out that the approximately even division among appellate courts reinforces our conclusion that the constitutional issue here presented is a very difficult one.

### III.

Although the State does not contend that the constitutional right to privacy issue in this case is insubstantial, the State does argue against applying the principle that a statute should be construed so as to avoid a serious constitutional question. The State correctly notes that "[o]nly when a statute is ... reasonably susceptible to two different interpretations can this Court avoid deciding a constitutional question by choosing the interpretation that is clearly valid." (Respondent's Supplemental Brief, p. 6 n. 1). *See Heileman Brewing v. Stroh Brewery, supra,* 308 Md. at 764, 521 A.2d at 1234 ("a construction which avoids a

constitutional issue must be reasonable; it must be permitted by the statutory language"); *Davis v. State,* 294 Md. 370, 378, 451 A.2d 107, 111 (1982), and cases there cited. The State asserts that "[i]n the present case, the constitutional question must be decided because the language of Article 27, Section 554 is plain and is not susceptible of more than one interpretation." (Respondent's Supplemental Brief, p. 2).

In urging that § 554 is not susceptible to a construction which excludes from its coverage consensual, noncommercial, heterosexual activity between adults in the privacy of the home, the State points out that the statute makes no reference to the factors of consent-nonconsent, commercial-noncommercial, etc. The State emphasizes: "The statute draws no distinction between consensual and nonconsensual activity and, further, does not distinguish commercial from noncommercial, public from private, homosexual from heterosexual, married from unmarried, or adult from juvenile activity. The provision applies to '[e]very person ... who shall be convicted of placing his or her sexual organ in the mouth of any other person....'" (State's Supplemental Brief, p. 4).

What the State's argument overlooks, however, is that the very broad and sweeping nature of § 554's language, with no specifics except a description of some of the "unnatural or perverted" sexual acts encompassed, renders the statute reasonably susceptible to different constructions. The statute's silence concerning the matters of consent, privacy, marriage, etc., creates legitimate questions regarding the reach of the statute.

General statutes like § 554, which, if given their broadest and most encompassing meaning, give rise to constitutional questions, have regularly been the subject of narrowing constructions so as to avoid the constitutional issues. For example, *Yangming Transport v. Revon Products, supra,* 311 Md. 496, 536 A.2d 633, involved a statute which stated that a foreign corporation doing *any* interstate, intrastate or foreign business in this State, without registering or

qualifying, may not maintain a suit in the courts of this State. Because giving the statute its literal, broad all-encompassing meaning would present substantial issues under the federal constitution's Commerce Clause, we construed the statute to apply only to foreign corporations engaging in a substantial amount of localized business activity in Maryland.

Another example is *In Re James D.*, 295 Md. 314, 455 A.2d 966 (1983), involving a statute making parents financially responsible for certain losses resulting from their child's delinquent acts. The statute literally applied to "the parent of a child" committing a delinquent act, without any limitation whatsoever based on the relationship between the parent and the child. This Court, applying the principle that a statute should be interpreted to avoid a serious constitutional issue, decided " 'to construe the statute more narrowly than its literal wording.' " 295 Md. at 327, 455 A.2d at 972. The Court held that "parent" within the meaning of the statute did not include a parent whose child had been committed to the custody of the State when the delinquent acts occurred.

*Wilson v. Bd. of Sup. of Elections*, 273 Md. 296, 328 A.2d 305 (1974), also dealt with broad language which was given a narrowing construction in order to avoid issues concerning the language's validity. *Wilson* involved a proposed amendment to the Baltimore City charter which prohibited the construction of any stadium in Baltimore City "with the use of public funds." Again applying the rule that provisions should be construed so as to avoid doubts over their validity, this Court held that the words "public funds" meant "funds of the City of Baltimore." 273 Md. at 301–303, 328 A.2d at 308–310. *See also, e.g., Board of Trustees v. City of Baltimore, supra,* 317 Md. at 97–98, 562 A.2d at 732–733 (construing broad delegation of legislative power language to be advisory only, in order to avoid a serious issue concerning validity); *Mangum v. Md. St. Bd. of Censors,* 273 Md. 176, 187–192, 328 A.2d 283 (1974) (construing definition of "obscenity" in movie censorship law

narrowly, in light of First Amendment requirements); *City of Baltimore v. Concord,* 257 Md. 132, 139–143, 262 A.2d 755 (1970); *Miller v. State,* 174 Md. 362, 372–374, 198 A. 710 (1938).

Consequently, in order to avoid serious constitutional issues, this Court has repeatedly given a narrow construction to statutes containing broad general language. Under our cases, the broad, nonspecific language of Art. 27, § 554, is subject to a limiting construction in order to avoid a substantial constitutional issue.

In light of the rule that statutes should be construed so as to avoid casting doubt upon their constitutionality, statutory provisions like § 554 have elsewhere been interpreted to exclude consensual, noncommercial, heterosexual activity between adults in private. For example, in *Commonwealth v. Balthazar,* 366 Mass. 298, 318 N.E.2d 478 (1974), the defendant was convicted under a statute proscribing an "unnatural and lascivious act with another person," based upon an act of fellatio performed upon him by the prosecuting witness. The Supreme Judicial Court of Massachusetts, after pointing to cases articulating "the constitutional right of an individual to be free from government regulation of certain sex-related activities," concluded that the statute "must be construed to be inapplicable to private, consensual conduct of adults." 366 Mass. at 301–302, 318 N.E.2d at 480–481. *See Commonwealth v. Hill,* 377 Mass. 59, 62–63, 385 N.E.2d 253, 256 (1979).

The principle that a statute will be construed so as to avoid a serious constitutional question is applicable to Art. 27, § 554. Under that principle, § 554 does not encompass consensual, noncommercial, heterosexual activity between adults in the privacy of the home.

## IV.

The reported opinions of this Court involving Art. 27, § 554, as well as the opinions under § 553 proscribing sodomy, confirm our conclusion that § 554 does not apply to

noncommercial, heterosexual acts between consenting adults in the privacy of the home. None of the opinions of this Court upholding convictions under either § 554 or § 553 has involved sexual activity under such circumstances.

Thus, many cases in this Court involving §§ 554 or 553 have been prosecutions for homosexual activity. *McKenzie v. State,* 236 Md. 597, 204 A.2d 678 (1964); *Bradbury v. State,* 233 Md. 421, 197 A.2d 126 (1964); *Canter v. State,* 224 Md. 483, 168 A.2d 384 (1961); *Jefferson v. State,* 218 Md. 397, 147 A.2d 204 (1958); *Taylor v. State,* 214 Md. 156, 133 A.2d 414 (1957); *Gregoire v. State,* 211 Md. 514, 128 A.2d 243 (1957); *Blake v. State,* 210 Md. 459, 124 A.2d 273 (1956); *Davis v. State,* 3 H. & J. 154 (1810) (involving an earlier sodomy statute, Ch. 57 of the Acts of 1793). *See also Fletcher v. State,* 256 Md. 310, 260 A.2d 34 (1970).

Several cases have involved prosecutions for sexual acts with minors. *State v. Grady,* 276 Md. 178, 345 A.2d 436 (1975); *McKenzie v. State, supra; Bradbury v. State, supra; Jefferson v. State, supra; Saldiveri v. State,* 217 Md. 412, 143 A.2d 70 (1958); *Taylor v. State, supra; Gregoire v. State, supra.* Nonconsensual sexual acts have been prosecuted under §§ 554 and 553 or predecessor statutes. *Daniels v. State,* 237 Md. 71, 205 A.2d 295 (1964); *Wampler v. Warden,* 231 Md. 639, 191 A.2d 594 (1963); *Berger v. State,* 179 Md. 410, 20 A.2d 146 (1941); *Davis v. State, supra.*

Finally, cases in this Court have upheld convictions under § 554 based on engaging or attempting to engage in fellatio in places which could not be considered "private." *Neville v. State,* 290 Md. 364, 430 A.2d 570 (1981); *Haley v. State,* 200 Md. 72, 88 A.2d 312 (1952); *Berger v. State, supra.* The distinction between engaging in such conduct in private and in non-private areas was expressly recognized in the *Neville* case. Judge Rodowsky for the Court in *Neville* explained as follows (290 Md. at 377–378, 430 A.2d at 576–577):

"Neville asserts that § 554 is unconstitutional 'as applied to consenting adults of the opposite sex acting in private.' While the questions presented in the petitions for certiorari have characterized the conduct here as being 'private,' and while that characterization may well be properly applied to the locations here involved in other contexts, the private nature of particular conduct in a given location for constitutional right of privacy purposes is a matter of degree determined by all of the circumstances. Here, where the conduct even if consensual, is fellatio, and even if we assume, *arguendo*, that constitutional personal autonomy could under some circumstances protect that sexual act, we do not believe that constitutional personal autonomy prohibits enforcement of § 554 under the facts of the present case."

\* \* \* \* \* \*

"The clear majority of consensual fellatio cases which have considered arguments based on personal autonomy have looked to the location and other circumstances to determine if any right of privacy could apply."

The Court then held (290 Md. at 378–379, 430 A.2d at 577):

"We hold that Md.Code, Art. 27, § 554 was constitutionally applied to each petitioner. Each petitioner engaged in this intimate sexual activity during daylight hours in a place which was out of doors, which was in a well populated community, and which was equally as accessible to uninvited other persons as it was to petitioners."

And, summarizing many cases throughout the country, the *Neville* opinion observed (290 Md. at 381, 430 A.2d at 578, footnotes omitted):

"Statutes prohibiting oral [sex acts], which could be read to include conduct between consenting adults, have not been struck down where the statute was validly applied to the defendant because his conduct was not in private, or took place in prison, or was with a minor or was accomplished by force."

Despite the many cases in this Court involving §§ 554 and 553, none has been a prosecution based on consensual, noncommercial, heterosexual activity between adults in the privacy of the home. This is a strong indication that such conduct is not within the contemplation of § 554.

## V.

■ In addition to its argument that § 554 cannot reasonably be interpreted to exclude the consensual conduct found in this case, the State makes a legislative history argument. The argument, however, is not based upon any legislative history associated with the initial enactment of § 554 by Ch. 616 of the Acts of 1916.[5] Instead, it is based upon legislative history concerning Ch. 573 of the Acts of 1976.

Ch. 573 of the Acts of 1976 essentially repealed former Art. 27, §§ 461–462A and 464, and added new sections 461–464E to Art. 27 of the Code. The effect of the new sections was, *inter alia,* to divide the offense of rape into first degree rape and second degree rape, and to enact new sexual offenses in the first degree through the fourth degree. *See* Pitcher, *Rape And Other Sexual Offense Law Reform In Maryland,* 7 U.Balt.L.Rev. 151 (1977). Where the persons involved are all adults, and the victim is not mentally defective, physically incapacitated, or helpless, these new offenses all require proof that the act was "against the will and without the consent of the other person."

As originally introduced and as approved by the Senate Judicial Proceedings Committee, Senate Bill 358, which became Ch. 573 of the Acts of 1976, would have repealed Art. 27, §§ 553 and 554. The Senate Judicial Proceedings Committee report on Senate Bill 358 stated:

"Present law proscribes consensual anal (sodomy) or oral (perverted practices) sexual acts. Since these crimes

---

5. The parties have not called our attention to any 1916 legislative history relevant to the statutory interpretation issue in this case, and we have discovered no such legislative history.

[under §§ 553 and 554], when committed between consenting adults, are very rarely prosecuted because of their clandestine and personal nature, they are not a proper subject of statutory recognition by prohibition." Nevertheless, before final enactment, Senate Bill 358 was amended so as not to repeal §§ 553 and 554. Those sections were left intact.

The State argues that this 1976 legislative history shows that the General Assembly intended § 554 to encompass consensual, noncommercial, heterosexual activity between adults in private. The State claims that this is shown by the Senate Committee's recognition that § 554 extends to consensual activity and the General Assembly's refusal to repeal § 554.

The State's argument is unpersuasive. There are several reasons why the General Assembly may have chosen to retain § 554, which are fully consistent with the view that § 554 does not cover consensual, noncommercial, heterosexual activity between adults in private. For example, the General Assembly may have decided that consensual homosexual acts should still be prohibited, or that consensual sexual acts in non-private places, such as involved in *Neville v. State, supra,* should remain criminal. Some consensual sexual acts involving minors may not, because of the age-bracket requirements, fall within the new sexual offense statutes. Construing § 554 so as to exclude consensual, noncommercial, heterosexual activity between adults in private, leaves § 554 quite viable. Many activities which would not be prohibited by the rape and sexual offense statutes would still fall within the prohibition of § 554.

Under the circumstances of this case, Art. 27, § 554, does not encompass the act for which the petitioner was convicted. Therefore the conviction must be reversed.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR MONT-

GOMERY COUNTY AND REMAND THE CASE TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY WITH DIRECTIONS THAT A JUDGMENT OF ACQUITTAL BE ENTERED. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY MONT-GOMERY COUNTY.

Concurring opinion by CHASANOW, J.

Dissenting opinion by MURPHY, C.J., in which McAULIFFE, J., joins.

MURPHY, Chief Judge, dissenting.

The majority holds that Maryland's "Unnatural or perverted sexual practices" statute, Maryland Code (1957, 1989 Repl.Vol.), Article 27, § 554, which prohibits fellatio among other proscribed acts, does not encompass such conduct where it is not engaged in for commercial purposes and involves consenting adults of opposite sexes in the privacy of the home. The Court does not, therefore, address the constitutional question of whether, in the circumstances of this case, the act of fellatio, proscribed by § 554, is conduct protected by the constitutional right of privacy.

In its disposition of this case, the Court has applied the principle that where a statute is susceptible to two reasonable interpretations, that interpretation which avoids a determination of the statute's constitutionality is preferred. I do not find that the principle is applicable in this case because the language of § 554 is not susceptible, *reasonably*, to the interpretation placed upon it by the Court. That there may be a significant division throughout the country as to the *constitutionality* of statutes similar to § 554 provides no basis to conclude that the language of the Maryland statute lends itself to more than one reasonable interpretation of its provisions. On its face, § 554 does not exclude from its coverage consensual, noncommercial, heterosexual activity between adults in private. Indeed, the statute is all-inclusive in its coverage; it does not distinguish between consensual and nonconsensual acts, nor does

it distinguish between commercial and noncommercial sexual activity, public from private, homosexual from heterosexual, married from unmarried, or adult from juvenile activity. The statute criminalizes sexual acts deemed to be "unnatural" or "perverted," describes those acts, and provides no exceptions from the prohibited conduct.

Section 554 was enacted in 1916, a staid time in our history when the sexual mores of the people were far less tolerant than the moral attitudes that prevail in today's society. While there is no legislative history which sheds light on the legislative aim or purpose in enacting § 554, its plain words convey but one meaning—that it does not exclude, as here, the consensual, noncommercial act of fellatio between heterosexual adults in private. The statute has remained unchanged to this day. Whatever the legislative motivation for outlawing "unnatural or perverted sexual practices"—whether it was on grounds of public morality or public health—the statute's meaning today is the same as its meaning in 1916. That the language of § 554 is broad and "sweeping," as the majority states, cannot be bootstrapped into a rational holding that it is thereby subject to two reasonable interpretations. On the contrary, the statute's all-encompassing language was plainly intended to reach those "unnatural" or "perverted" sexual practices, therein so vividly described, without exception. No other *reasonable* conclusion is evident.

Concluding as I do that § 554 includes the type of sexual conduct in this case, I would consider the constitutional question presented—whether nonmarital, private consensual adult heterosexual relations of a type characterized by the legislature as "unnatural or perverted" are protected by the constitutional right of privacy. On this issue, I stand with the majority of the Court of Special Appeals in *Schochet v. State*, 75 Md.App. 314, 541 A.2d 183 (1988), and would hold that § 554 does not violate the constitutional right of privacy as to consensual, adult, heterosexual fellatio in private. In his scholarly opinion for the divided intermediate appellate court, Judge Moylan carefully ana-

lyzed Supreme Court and other authorities. As his opinion is simply beyond improvement, I adopt its reasoning and consequently would affirm the judgment in this case.

By way of postscript, I share Judge Moylan's observation that there has been a massive sexual revolution in the last quarter of this century and that modes of sexual expression once thought to be unnatural or perverted may now be part of the commonplace experience of a significant majority of Americans. *Schochet, supra,* 75 Md.App. at 350, 541 A.2d 183. If this be so, the legislature, as the elected representatives of the people, and as the primary body which declares the public policy of this State, should consider decriminalizing those sexual acts which it finds no longer are offensive to the present circumstances of our people.

Judge McAULIFFE authorizes me to state that he joins in the views expressed in this dissenting opinion.

CHASANOW, Judge, concurring:

I concur in the judgment in this case for the reasons stated by Judge Wilner in his dissenting opinion in *Schochet v. State,* 75 Md.App. 314, 541 A.2d 183 (1988).